JERRY SMART, SR., ADMINISTRATOR (ESTATE OF ALFRED SMART) *v.* JACK CORBITT ET AL.
(AC 30771)

DiPentima, C. J., and Gruendel and Foti, Js.

attachments, triggers the process of presenting factual issues in an orderly manner.

Argued November 8, 2010—officially released March 1, 2011

*Christi M. Carrano*, for the appellant (plaintiff).

*Michael P. Del Sole*, for the appellee (defendant Carminer Lavache).

*Audrey C. Kramer*, assistant corporation counsel, for the appellee (defendant Joseph Cappucci et al.).

DiPENTIMA, C. J. The plaintiff, the administrator of the estate of Alfred Smart, appeals from the judgment of the trial court, rendered on a directed verdict in favor of the defendant police officer, Carminer Lavache, and on a jury verdict in favor of the defendants, fire marshal Joseph Cappucci and the city of New Haven (city). The plaintiff raises a myriad of issues, only some of which this court finds reviewable. On appeal, the plaintiff claims that the court improperly (1) granted the defendants' motions to preclude the plaintiff's experts, (2) directed the jury to return a verdict in favor of Lavache, (3) permitted counsel for Lavache to misstate the law of proximate cause during voir dire examination, (4) determined that testimony and evidence the plaintiff sought to adduce was irrelevant, (5) denied his request to provide an interrogatory to the jury concerning negligence and (6) denied his motion to set aside the verdict. We affirm the judgment of the trial court.

This case arises out of an unfortunate and fatal house fire. On March 5, 2004, the decedent, Alfred Smart, died of smoke inhalation during a fire at 586 Orchard Street, New Haven (premises). On March 28, 2005, the decedent's brother, Jerry Smart, Sr., acting as the administrator of the estate, commenced a wrongful death action by filing a seventeen count complaint alleging negligence or reckless conduct on the part of eight defendants.[1] The appeal presently before this court concerns only three defendants: Cappucci, Lavache and the city.[2]

---

[1] The plaintiff's second amended complaint alleged liability on the part of Jack Corbitt and Alfred J. Cronk, the administrator of the estate of Dorothy M. McDaniel, as owners of the premises; Cappucci; Lavache; fire chief Michael Grant; police chief Francisco Ortiz; police emergency dispatcher Maria Sterling; and the city. We will refer to only Cappucci, Lavache and the city collectively as the defendants for purposes of this opinion. We will refer to them individually by name when necessary.

[2] On August 26, 2008, the plaintiff withdrew the complaint against one of the owners of the premises, Alfred J. Cronk, the administrator of the estate of Dorothy M. McDaniel. Similarly, on October 28, 2008, the plaintiff with-

The following procedural history is relevant to our analysis of the plaintiff's claims. In pertinent part, the plaintiff's second amended complaint alleged liability on the part of: (1) Cappucci, for failing to conduct a yearly inspection of the premises' fire detection devices as required by General Statutes (Rev. to 2003) § 29-305,[3] (2) Lavache, for failing to provide the address of the fire to the New Haven fire department in an accurate manner,[4] and (3) the city, for negligence based on the actions of Lavache and for failing to enforce the requirements of § 29-305.[5]

After a pretrial conference held on December 6, 2007, the court issued a scheduling order requiring the depositions of all fact witnesses to be completed by March 4, 2008, the disclosure of the plaintiff's expert witnesses by July 1, 2008, the disclosure of the defendants' expert witnesses by September 1, 2008, and a trial date "on or about October 1, 2008." On December 14, 2007, the court set October 28, 2008, as the date for commencement of trial. Thereafter, the plaintiff sought five modifications of this scheduling order. On February 29, April

drew the complaint against Jack Corbitt, the other owner of the premises. On November 25, 2008, a verdict was directed in favor of police chief Francisco Ortiz, fire chief Michael Grant and police emergency dispatcher Maria Sterling, which the plaintiff does not challenge in this appeal.

[3] The plaintiff also alleged that Cappucci negligently permitted a dangerous condition to exist at the premises for an unreasonable amount of time, and that he exhibited reckless indifference to the discharge of his duties and the health or safety of the occupants at the premises.

[4] The plaintiff also alleged negligence in that Lavache failed to (1) respond to the fire in a timely manner and pursuant to proper protocol, (2) ensure the safety of all occupants of the premises, (3) enter the burning building and ascertain whether anyone remained inside, (4) alert other emergency responders to the possibility that people remained inside the burning premises and (5) assist or direct in the rescue of the decedent.

[5] General Statutes (Rev. to 2003) § 29-305 provides in relevant part: "Each local fire marshal shall inspect or cause to be inspected, at least once each calendar year . . . all occupancies regulated by the Fire Safety Code within his jurisdiction . . . only for the purpose of determining whether the requirements specified in said code relative to smoke detection and warning equipment have been satisfied. . . ."

4, and May 29, 2008, the court granted the plaintiff's motions to modify the scheduling order to extend the deadline in which to depose fact witnesses. Likewise, the court granted the plaintiff's June 30, 2008 motion to modify the scheduling order to extend the deadline for disclosure of experts from July 1 until August 15, 2008.

On August 15, 2008, the plaintiff filed a second motion to extend the deadline for the disclosure of his expert witnesses to September 30, 2008, claiming that the delayed receipt of transcripts from the depositions of fact witnesses had inhibited his ability to timely disclose his experts. The court denied this motion. On August 28, 2008, the plaintiff then filed a motion for a continuance, seeking to have the October 28, 2008 trial date continued for six months, claiming again that the delayed receipt of transcripts from fact witness depositions inhibited his ability to disclose experts. The court denied this motion, as well as the plaintiff's subsequent motion to reconsider.

The plaintiff then disclosed his experts on September 19 and 26 and on October 3, 2008. Thereafter, the defendants moved to preclude these experts from testifying at trial, claiming that the plaintiff's disclosure of his experts over one month late and approximately one month prior to the commencement of trial was in violation of Practice Book (2008) § 13-4 (4), caused them prejudice and would interfere with the orderly progress of trial. On October 28, 2008, prior to the commencement of jury selection, the court heard argument from counsel before granting the defendants' motions to preclude the plaintiff's experts from testifying.[6] The court

---

[6] After noting the plaintiff's prior extensions, the court ruled, in pertinent part: "The court finds that . . . not to preclude would cause undue prejudice to the moving party, which [is] the defendants. [The] [d]efendants would need to depose three experts, then would have to locate and retain their own experts, and a substantial continuance would be necessary to avoid prejudice to the defendants. It was mentioned a time frame of four months, which is a substantial period of time. Such a continuance would result in

also concluded, over the plaintiff's objection, that the defendants did not share a unity of interest and allowed counsel for Lavache four peremptory challenges and counsel for police emergency dispatcher Maria Sterling, police chief Francisco Ortiz, fire chief Michael Grant,[7] the city and Cappucci four peremptory challenges each.

Thereafter, the plaintiff presented his case to the jury. After the plaintiff rested, the defendants and Sterling, Ortiz and Grant moved for directed verdicts. After hearing argument from counsel, the court granted Lavache's motion for a directed verdict, determining that the plaintiff's evidence was inadequate to establish that Lavache's conduct was the proximate cause of the decedent's death and that Lavache was entitled to governmental immunity for his alleged negligence.[8] Similarly, the court ordered a directed verdict in favor of Ortiz, Grant and Sterling but denied Cappucci's motion for a directed verdict.

The plaintiff's allegations against Cappucci and the city were submitted to the jury on December 2, 2008. On December 4, 2008, the jury returned a verdict in favor of Cappucci and the city. The plaintiff moved to set aside the verdict and sought an order for a new trial with respect to the defendants. The court denied the plaintiff's motions, and this appeal followed. Additional facts will be set forth where necessary.

undue interference with the orderly progress of the trial because it would further delay a case that is already three and a half years old. To continue a case such as this, three and a half years old, when a trial date was set ten months ago . . . would not be just to the defendants. The court finds, also, that there's no underlying facts that have changed in the three and a half years this case has been pending. [The decedent] died on or about March 5, 2004. . . . [The] [p]laintiff alleges [that the] defendants were responsible for his death."

[7] See footnotes 1 and 2 of this opinion.

[8] Consequently, the court directed a verdict in favor of the city with respect to any claims arising out of the alleged negligence of Lavache.

On appeal, the plaintiff makes eleven claims of error, five of which we do not reach because the claims are either not preserved,[9] inadequately briefed or inadequately supported by the record.[10]

I

The plaintiff first claims that the court improperly granted the defendants' motions to preclude the plaintiff's use of expert testimony. The plaintiff acknowledges that he disclosed his experts outside of the

[9] The plaintiff claims that the court improperly allowed counsel for Lavache to question a witness regarding a settlement between the plaintiff and a prior party in violation of the court's order to exclude such testimony. A review of the record, however, reveals that the plaintiff did not object to the question, nor did the plaintiff seek to strike such testimony. The plaintiff also claims that the court abused its discretion in permitting certain opinion testimony that was based on hypothetical questions. The record reveals that this ground for objection was not asserted before the trial court.

"This court is not bound to consider claims of law not made at trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of an objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted." (Internal quotation marks omitted.) *Perez* v. *D & L Tractor Trailer School*, 117 Conn. App. 680, 693, 981 A.2d 497 (2009), cert. denied, 294 Conn. 923, 985 A.2d 1062 (2010). Accordingly, these two claims are preserved inadequately.

[10] The plaintiff claims that the court abused its discretion in denying his motion for a continuance and his subsequent motion to reconsider. The plaintiff, however, has failed to provide this court with any record of the court's reasoning. Accordingly, we do not reach this claim. See *LaSalle Bank, N.A.* v. *Randall*, 125 Conn. App. 31, 33–34, 6 A.3d 175 (2010) ("An appellate tribunal cannot render a decision without first fully understanding the disposition being appealed. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court." [Internal quotation marks omitted.]).

In addition, the plaintiff has failed to provide this court with an adequate record to review his claim that the trial court abused its discretion in ruling that the defendants did not share a unity of interest for purposes of assigning peremptory challenges. In order to succeed on this claim, the plaintiff must show that the court's alleged abuse of discretion has harmed him. See *Carrano* v. *Yale-New Haven Hospital*, 279 Conn. 622, 634, 904 A.2d 149 (2006). "As a threshold to demonstrating such harm . . . the complaining party must exhaust all of her own peremptory challenges and request additional challenges." Id., 639. The plaintiff has failed to allege or provide an adequate record for us to undertake this threshold inquiry.

scheduling deadline imposed by the court; however, he argues that testimony from his experts was necessary to establish that the fire department's delayed response to the fire was the proximate cause of the decedent's death, and that the delay in disclosing his experts caused no prejudice to the defendants and would have caused only minor interference with the progress of trial. Thus, the plaintiff claims that the court abused its discretion because the consequences of preclusion were disproportionate to the consequences of his violation. We are not persuaded.

We first set forth our standard of review. In *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 17–18, 776 A.2d 1115 (2001), our Supreme Court determined that to withstand scrutiny on appeal, a court's order of sanctions for a violation of discovery must satisfy three requirements: "First, the order to be complied with must be reasonably clear. . . . Second, the record must establish that the order was in fact violated . . . [and] [t]hird, the sanction imposed must be proportional to the violation." The plaintiff challenges the propriety of the court's sanction with respect to the third requirement, which we review for an abuse of discretion. See id., 18.

"There is no hard and fast rule by which an abuse of discretion may be determined but, in general, for an exercise of discretion not to amount to an abuse, it must be legally sound and there must be an honest attempt by the court to do what is right and equitable under the circumstances of the law, without the dictates of whim or caprice." (Internal quotation marks omitted.) *Sullivan* v. *Yale-New Haven Hospital, Inc.*, 64 Conn. App. 750, 754, 785 A.2d 588 (2001). "As with any discretionary action of the trial court, appellate review requires every reasonable presumption in favor of the action, and the ultimate issue for us is whether the trial court could have reasonably concluded as it did. . . .

Never will the case on appeal look as it does to a [trial court] . . . faced with the need to impose reasonable bounds and order on discovery." (Citations omitted; internal quotation marks omitted.) *Millbrook Owners Assn., Inc.* v. *Hamilton Standard,* supra, 257 Conn. 15–16.

After a thorough review of the record and the court's reasoning, we conclude that the court did not abuse its discretion. The record reveals that the court cited to the proper rule of procedure[11] and determined that not to preclude the experts, when they were disclosed only four to five weeks prior to jury selection, would cause undue prejudice to the defendants in that they would be required to depose the plaintiff's three experts, then locate, retain and depose their own experts, a task that was estimated to require a continuance of trial for approximately four months. Such a continuance, the court concluded, would cause undue interference with the orderly progression of trial.

The court noted that the plaintiff's complaint setting forth his legal theory against Lavache was filed in 2005 and that no set of facts had changed during the three and one-half years the case had been pending that would have hindered the plaintiff's ability to retain and disclose his experts. The disclosures filed by the plaintiff

[11] Practice Book (2008) § 13-4 (4), which governs the disclosure of experts, provides in relevant part: "[A]ny plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. . . . If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subdivision . . . such expert shall not testify if, upon motion to preclude such testimony, the judicial authority determines that the late disclosure (A) will cause undue prejudice to the moving party; or (B) will cause undue interference with the orderly progress of trial in the case . . . ." See also *Friends of Animals, Inc.* v. *United Illuminating Co.,* 124 Conn. App. 823, 839–40, 6 A.3d 1180 (2010).

reveal that his experts were to testify regarding the postmortem examination and medical records of the decedent, and would opine that the decedent suffered from asphyxia due to smoke inhalation. The plaintiff, however, acknowledges that he had access to these records for at least two years prior to jury selection.

The record further indicates that the plaintiff overstates the consequence of the preclusion. The plaintiff's theory of liability was that the delay of three minutes caused by Lavache's alleged inaccurate report of the location of the fire to the police emergency dispatcher was a substantial factor causing the decedent's asphyxia. None of the disclosures, however, indicated that the plaintiff's experts would testify that such a delay was a substantial factor causing the decedent's asphyxia.

Given the above record, we cannot conclude that the court abused its discretion in determining that the prejudice to the defendants and undue delay in the orderly progress of trial caused by the plaintiff's untimely disclosure of his experts was proportionate to the sanction of exclusion. Even when presented with a more compelling record, we have determined previously that there has been no abuse of discretion. See *McVerry* v. *Charash*, 96 Conn. App. 589, 598–600, 901 A.2d 69 (preclusion of expert "tantamount to dismissing the plaintiff's case" but not disproportionate sanction when good cause for delay lacking and disclosure made thirteen weeks before trial), cert. denied, 280 Conn. 934, 909 A.2d 961 (2006).

II

The plaintiff next claims that the court improperly granted Lavache's motion for a directed verdict. Specifically, the plaintiff contends that the court erroneously determined that the alleged negligent acts and omissions of Lavache were discretionary in nature, thereby

entitling Lavache to governmental immunity.[12] The plaintiff argues that Lavache's alleged failure to respond to the fire in a timely manner, provide the accurate address of the fire to the police emergency dispatcher, ascertain whether victims remained inside the burning premises and communicate with other police and fire responders were ministerial in nature because they were mandated by police protocol. Moreover, the plaintiff contends that even if Lavache's acts were discretionary, an exception to the doctrine of governmental immunity applies because the decedent was an identifiable person subject to imminent harm. We disagree.

As an initial matter, we set forth the legal principles that guide our analysis. "Our standard for reviewing a challenge to a directed verdict is well settled. Generally, litigants have a constitutional right to have factual issues resolved by the jury. . . . Directed verdicts [therefore] are historically not favored and can be upheld on appeal only when the jury could not have reasonably and legally reached any other conclusion. . . . We review a trial court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff. . . . A verdict may be directed where the decisive question is one of law or where the claim is that there is insufficient evidence to sustain a favorable verdict." (Internal quotation marks omitted.) *C & H Associates Ltd. Partnership* v. *Stratford,* 122 Conn. App. 198, 203, 998 A.2d 833 (2010).

---

[12] The record reveals that the court also granted Lavache's motion for a directed verdict on another independent ground: the plaintiff had failed to adduce any evidence that the delay caused by Lavache's alleged negligent report of the fire's location was a proximate cause of the decedent's death. Because we conclude that the court properly determined that governmental immunity shielded Lavache from liability for the alleged negligent acts and omissions set forth in the plaintiff's complaint, we do not reach this other independent ground for directing the verdict.

"The [common-law] doctrines that determine the tort liability of municipal employees are well established. . . . Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. . . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) *Violano* v. *Fernandez*, 280 Conn. 310, 318, 907 A.2d 1188 (2006).

"Police officers are protected by discretionary act immunity when they perform the typical functions of a police officer." *Soderlund* v. *Merrigan*, 110 Conn. App. 389, 400, 955 A.2d 107 (2008). "The policy behind discretionary act immunity for police officers is based on the desire to encourage police officers to use their discretion in the performance of their typical duties. Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury." (Internal quotation marks omitted.) Id., 399–400. Whether conduct is ministerial or discretionary may be determined as a matter of law. See *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 49, 881 A.2d 194 (2005) ("[a]lthough the determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . there are cases where it is apparent from the complaint" [internal quotation marks omitted]).

We conclude that the sixteen acts and omissions detailed in the plaintiff's complaint against Lavache are typical functions of a police officer characterized by the exercise of judgment. The plaintiff argues that Lavache's conduct in responding to the fire was governed by police "protocol"; however, "[t]here is a difference between laws that impose general duties on officials and those that mandate *a particular response to specific conditions.*" (Emphasis added.) *Bonington* v. *Westport*, 297 Conn. 297, 308, 999 A.2d 700 (2010). Lavache was responding to a public emergency, which is a typical police officer function, in which he was required to use his judgment and to make split-second decisions. Decisions such as whether to enter a burning building to ascertain if any occupants remain inside or how best to communicate, coordinate and assist in rescue efforts with other emergency responders at the scene of a crisis inherently involve the use of that officer's discretion and judgment.

Nor is it a ministerial duty for a police officer to provide emergency dispatch with the correct address when at the scene of an emergency. We note that the plaintiff has not provided this court with a legal or statutory source for this alleged ministerial duty. See *Violano* v. *Fernandez*, supra, 280 Conn. 323 (defendant's act not ministerial when "the plaintiffs have not alleged that [the defendant] was required by any city charter provision, ordinance, regulation, rule, policy, or any other directive to [perform the act] in any prescribed manner"). Rather, the plaintiff grounds his assertion on testimony from Lavache and police officer Steven Torquati that an officer is trained to "speak clearly, give proper locations, landmarks," and "if you can, provide a location number" to emergency dispatch when responding to a fire.

"A ministerial duty on the part of an official often follows a quasi-judicial determination by that official

*as to the existence of a state of facts.* Although the determination itself involves the exercise of judgment, and therefore is not a ministerial act, the duty of giving effect, by taking appropriate action, to the determination is often ministerial." (Emphasis added; internal quotation marks omitted.) *Bonington* v. *Westport*, supra, 297 Conn. 309. Even assuming that alerting emergency dispatch upon arriving at the scene of an emergency is a ministerial duty, Lavache's determination that a fire existed and how best to alert emergency dispatch of its location, for example by use of landmarks, nearby intersections or by the street number was a discretionary determination that triggered the alleged ministerial duty. See, e.g., id. ("even when the duty to respond to a violation of law is ministerial because that specific response is mandated, the predicate act—determining whether a violation of law exists—generally is deemed to be a discretionary act"); *Wright* v. *Brown*, 167 Conn. 464, 472, 356 A.2d 176 (1975) (determining whether dog had bitten person "involved the exercise of judgment, the subsequent duty to quarantine for fourteen days was mandatory and, therefore, ministerial"); *Leger* v. *Kelley*, 142 Conn. 585, 589, 116 A.2d 429 (1955) (determination by commissioner of motor vehicles as to date car manufactured and whether equipped with safety glass approved by him was discretionary, but duty to register or refuse to register car, according to which determination he had reached, was ministerial).

Finally, the plaintiff's claim that Lavache was not entitled to governmental immunity because the decedent was an identifiable person subject to imminent harm is without merit. We recognize that an exception to discretionary act immunity may apply if "the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." (Internal quotation marks omitted.) *Bailey* v. *West Hartford*, 100 Conn.

App. 805, 811, 921 A.2d 611 (2007). "By its own terms, this test requires three things: (1) an imminent harm; (2) an *identifiable* victim; and (3) a public official to whom it is apparent that his or her conduct [or omission] is likely to subject that victim to that harm." (Emphasis added; internal quotation marks omitted.) Id., 812. The plaintiff failed to allege or adduce any evidence of the second requirement.

The plaintiff's third amended complaint does not allege that Lavache knew that the decedent was inside the burning house. Rather, the plaintiff grounded his allegations of negligence on Lavache's failure to "*ascertain* whether occupants still remained in the subject premises," "*ensure* that all occupants of the subject premises were safely out of the building" and "inform the fire personnel . . . at 586 Orchard Street that there was a *possibility* that there were additional occupants in the subject premises on the third floor . . . ." (Emphasis added.) Further, the plaintiff has not directed this court to any evidence, and our search of the record reveals none, that would allow a jury to conclude without recourse to surmise or speculation that Lavache was aware that the decedent was in the burning building. See *Riccio* v. *Harbour Village Condominium Assn., Inc.*, 281 Conn. 160, 163, 914 A.2d 529 (2007) ("[a]lthough it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation" [internal quotation marks omitted]).

III

The plaintiff next claims that the court committed reversible error by allowing counsel for Lavache to misstate the law of proximate cause to jurors during voir dire. The plaintiff argues that counsel for Lavache misstated the law by advising potential jurors that it was the plaintiff's burden to prove that Lavache's con-

duct was "the cause" of the decedent's death, not a "substantial factor" in bringing about the decedent's death. We disagree.

The following additional facts are pertinent to the plaintiff's claim. During jury selection, counsels' voir dire of prospective jurors was conducted without being recorded. On October 30, 2008, at a hearing before the court, the plaintiff raised an objection to a question Lavache's counsel had asked during voir dire. Lavache's counsel admitted that he asked "several proposed jurors whether or not they could follow the judge's instructions on the law, and of course, all of them, so far, at least, have indicated that they could. And, I asked several jurors if the judge instructed that it was the plaintiff's burden to establish that my client's negligence was the cause of the decedent's death, if they could follow that instruction, with the caveat that anything that I said was not the law, it was what I expected [the court] to say, and to the extent that [the court's] instruction was different, that they, obviously, should follow that." The court overruled the plaintiff's objection.

"[A]s a practical matter, the wide range of cases submitted to juries, along with the attendant impossibility of establishing a set pattern of voir dire questions, requires that the trial court be vested with broad discretion in determining the extent of the voir dire examination. . . . [T]he court's rulings . . . will not be disturbed unless the court has clearly abused its discretion or it appears that prejudice to one of the parties has resulted." (Citations omitted; internal quotation marks omitted.) *State* v. *Lugo*, 266 Conn. 674, 683, 835 A.2d 451 (2003).

We conclude that the court did not abuse its discretion. First, the statement by Lavache's counsel, while perhaps not the most precise pronouncement of the

correct legal standard, was not a misstatement of the law. "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." (Internal quotation marks omitted.) *Sturm* v. *Harb Development, LLC*, 298 Conn. 124, 139, 2 A.3d 859 (2010). Thus, the plaintiff was required to prove that Lavache caused the decedent's death. Second, Lavache's counsel asked prospective jurors if they could *follow* the law of causation, as to be explained to them by the judge, without seeking to ascertain their knowledge or ignorance of the concept. Cf. *State* v. *Dahlgren*, 200 Conn. 586, 598–99, 512 A.2d 906 (1986) (no abuse of discretion when court prohibited voir dire questions involving "recognized principles of law" such as "beyond a reasonable doubt" and "presumption of innocence," and whether a "juror understand[s] the meaning of those terms" [internal quotation marks omitted]).

Finally, there is no indication that the statement by Lavache's counsel was part of "a calculated effort on the part of counsel to ascertain before the trial starts what the reaction of the venireman will be to certain issues of fact or law or, at least, to implant in his mind a prejudice or prejudgment on those issues." *State* v. *Mendill*, 141 Conn. 360, 362, 106 A.2d 178 (1954). Accordingly, we conclude that the court did not abuse its discretion.

IV

The plaintiff next claims that the court made two improper evidentiary rulings. The plaintiff contends that the court erroneously determined that (1) Cappucci's testimony that no other community in Connecticut complies with § 29-305 was relevant, and (2) testimony and evidence concerning a file documenting a prior complaint lodged by a resident of the premises

with the city's Livable City Initiative (department) was irrelevant. We disagree.

We begin by setting forth our standard of review and the principles that guide our analysis. "The trial court's ruling on the admissibility of evidence is entitled to great deference . . . [and] will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *State* v. *Zillo*, 124 Conn. App. 690, 695, 5 A.3d 996 (2010). "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . The trial court has wide discretion to determine the relevancy of evidence . . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *Hayes* v. *Camel*, 283 Conn. 475, 483, 927 A.2d 880 (2007).

A

The plaintiff contends that the court improperly determined that Cappucci's testimony that no other community in Connecticut complies with § 29-305 was relevant.[13] Cappucci and the city claim that Cappucci's testimony was relevant to establish good faith, an element of the special defense asserted by Cappucci and the city that was their burden to prove. We agree with Cappucci and the city.

[13] In addition, the plaintiff claims that Cappucci's testimony was irrelevant because it was "highly speculative and improper opinion testimony without any foundation." This claim, however, was not argued at trial. Accordingly, we decline to review this claim and do not reach its merits. See *State* v. *Bell*, 113 Conn. App. 25, 40, 964 A.2d 568 ("In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted." [Internal quotation marks omitted.]), cert. denied, 291 Conn. 914, 969 A.2d 175 (2009).

The following additional facts are germane to the plaintiff's claim. Along with their answer to the plaintiff's complaint, Cappucci and the city filed special defenses found in General Statutes §§ 52-557n (b) (8) and 29-298 (b).[14] At trial, the plaintiff called Cappucci to testify and inquired into his compliance with § 29-305. On direct examination by the plaintiff, Cappucci testified that § 29-305 required him, as fire marshal, to conduct a yearly inspection of the smoke detection devices in all three-family homes that fall under the fire code. He testified that the premises fell under the fire code and that for the eight years he had been fire marshal no inspection of the premises had been completed. He further testified that it was his job to ensure, to the best of his ability, that § 29-305 was enforced and that the lack of adequate staff interfered with his ability to enforce the statute. On cross-examination, Cappucci elaborated that if he had sufficient money and staff he would do these inspections. Cappucci's counsel then asked: "Do you know anything about this statute, as far as other communities?" The plaintiff objected on the ground of relevance, and the court overruled his objection. Thereafter, Cappucci testified that to the best of his knowledge "there's not a city in this state that complies with it" for "manpower" reasons.

[14] General Statutes § 52-557n (b) provides in relevant part: "Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee . . . acting within the scope of his employment . . . shall not be liable for damages to person or property resulting from . . . (8) failure to make an inspection or making an inadequate or negligent inspection of any property . . . to determine whether the property complies with or violates any law or contains a hazard to health or safety, unless the political subdivision *had notice of such a violation of law* or such a hazard or unless such failure to inspect or such inadequate or negligent inspection *constitutes a reckless disregard for health or safety under all the relevant circumstances* . . . ." (Emphasis added.)

General Statutes § 29-298 provides in relevant part: "(b) . . . Any officer of a local fire marshal's office, if acting without malice and in good faith, shall be free from all liability for any action or omission in the performance of his official duties."

We cannot conclude that the court abused its discretion in determining that Cappucci's testimony was relevant. The plaintiff's complaint alleged that Cappucci was required to conduct a yearly inspection of the premises pursuant to § 29-305 and that his failure to do so was in reckless disregard of his duties and the health or safety of the occupants. In their amended answer, Cappucci and the city asserted the special defense set forth in § 29-298 (b), which relieves a fire marshal from all tort liability for any act or omission performed pursuant to his official duties if such act or omission was "without malice and in good faith . . . ." General Statutes § 29-298 (b). Cappucci's testimony that a lack of resources prevented him from conducting the yearly inspections required by § 29-305 and that to his knowledge no other community in the state was able to comply with the statute for similar reasons was relevant to Cappucci's special defense in that it tended to establish that Cappucci was acting in good faith when he failed to inspect the premises as required by § 29-305.[15]

B

The plaintiff next claims that the court improperly determined that certain testimony and evidence concerning a file documenting a prior complaint concerning the premises reported to the department was irrelevant. Specifically, the plaintiff contends that the court improperly excluded as irrelevant (1) questions he posed during examination of the department's executive director, Andrew Rizzo, seeking to determine why a document that Rizzo produced at trial was not given in the department's response to the plaintiff's Freedom of Information Act[16] request, and (2) portions of a complaint case history document that had been filed with

---

[15] We note that Cappucci's testimony was also relevant to whether his failure to inspect "constitute[d] a reckless disregard for healthy or safety under all relevant circumstances" pursuant to § 52-557n (b) (8), which Cappucci alleged as a special defense. See footnote 14 of this opinion.

[16] See General Statutes § 1-200 et seq.

the department, detailing the presence of trash or garbage at the premises and that the premises were without a furnace and were being heated by a stove. We conclude that the first claim is without merit and that the second claim was preserved inadequately.[17]

The following additional facts are relevant to the plaintiff's claims. At trial, Rizzo testified that the department is a department of the city that deals with quality of life issues and housing code violations within the neighborhoods of New Haven. Rizzo testified that the department had received a complaint on March 26, 2002, regarding smoke detection devices at the premises and produced a document titled "complaint case history." Over objection by counsel for Cappucci and the city, the court allowed Rizzo to testify regarding this document's reference to an allegation that the premises lacked smoke detectors.

The court then admitted into evidence a copy of the complaint call report, an initial document produced when the department first receives a complaint. The

[17] The plaintiff argues that the details contained on the complaint case history document provided by the department were relevant because he had alleged in his complaint that the city and Cappucci were reckless, and notice of these fire safety code violations was probative of the alleged recklessness. In his reply brief, the plaintiff claims for the first time that the details were relevant to address the special defense raised by the city and Cappucci pursuant to § 52-557n (b) (8). A review of the record reveals that neither of these theories of relevance were argued at trial.

"Ordinarily, we will not consider a theory of relevance that was not raised before the trial court." *State* v. *Adorno*, 121 Conn. App. 534, 548 n.4, 996 A.2d 746, cert. denied, 297 Conn. 929, 998 A.2d 1196 (2010). "[W]e have consistently declined to review claims based on a ground different from that raised in the trial court." (Internal quotation marks omitted.) *Baker* v. *Cordisco*, 37 Conn. App. 515, 522, 657 A.2d 230, cert. denied, 234 Conn. 907, 659 A.2d 1207 (1995). In addition, "[i]t is well established . . . that [c]laims . . . are unreviewable when raised for the first time in a reply brief . . . ." (Internal quotation marks omitted.) *Hurley* v. *Heart Physicians, P.C.*, 298 Conn. 371, 378 n.6, 3 A.3d 892 (2010). Because the grounds the plaintiff now asserts were not properly put before the trial court, we will not review this claim.

complaint call report did not indicate whether any action had been taken by the department to address the complaint, whereas the complaint case history document contained a "close out date," indicating that an inspector had been sent to investigate the complaint and that the issue had been resolved. The plaintiff then sought to question Rizzo as to why, in response to the freedom of information request he had made to the department for the "entire file" concerning the premises, he had, allegedly, received only the complaint call report and not the complaint case history document. Counsel for Cappucci and the city objected to the relevance of the questions, and the court sustained the objection. The court determined that because both documents were then in evidence, whether the plaintiff's freedom of information request had been complied with was a discovery issue that was not relevant to what the jury needed to decide.

The plaintiff claims that the court abused its discretion in determining that questions he sought to ask of Rizzo during direct examination were irrelevant. Specifically, the plaintiff argues that his questions seeking to determine why the department's response to his freedom of information request lacked a document that was produced at trial were relevant because Rizzo's credibility was at issue. We disagree.

"Evidence is relevant when it has any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." (Internal quotation marks omitted.) *State* v. *Clifford P.*, 124 Conn. App. 176, 189, 3 A.3d 1052, cert. denied, 299 Conn. 911, 10 A.3d 529 (2010). "As it is used in our code, relevance encompasses two distinct concepts, namely, probative value and materiality. . . . [M]ateriality turns upon what is at *issue* in the case, which generally will be determined by the pleadings and the applicable

substantive law." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Zillo*, supra, 124 Conn. App. 696–97; see also *State* v. *DeJesus*, 270 Conn. 826, 837, 856 A.2d 345 (2004) ("[r]elevance depends on the issues that must be resolved at trial" [internal quotation marks omitted]).

After a close examination of the record, we cannot conclude that the court abused its discretion. The department's alleged failure to fully comply with the plaintiff's document request made pursuant to the Freedom of Information Act was not material to the plaintiff's case. We recognize that the accuracy of the close out date on the complaint case history document produced by the department was probative of notice, and the issue of notice was material to the plaintiff's case because he had claimed that both Cappucci and the city had negligently "permitted and allowed a dangerous condition to exist" at the premises.[18] The plaintiff, however, was not precluded from challenging the accuracy of the close out date contained on the complaint case history document. The trial court only limited the plaintiff in his inquiry into whether his freedom of information request had been fully complied with, a question that was not material to any issue at trial.

V

The plaintiff next claims that the court committed harmful error in denying the plaintiff's request to provide an interrogatory to the jury permitting it to make

---

[18] Rizzo testified that the department composes a complaint call report upon receiving a complaint. The complaint call report is then assigned to an inspector who investigates the complaint. If the complaint is substantiated, the inspector contacts the owner or tenant to have the issue taken care of. If that party fails to address the issue, a letter is generated that provides the party with a deadline to bring the home into compliance with housing and safety codes. A case is closed when the inspector determines that the complaint is either unsubstantiated or the tenant or owner has brought the house into compliance. The fire marshal is only informed of a complaint that the department has received if the tenant or owner has failed to bring the premises into compliance.

a finding as to the negligence of Cappucci and the city. We disagree.

The following additional facts are necessary to address the plaintiff's claim. Prior to commencing its deliberations, the court charged the jury on the law it was required to apply and the interrogatories that it would be given to help it reach a verdict. The interrogatories asked if the jury found that Cappucci had notice of a violation of law with respect to the premises and, also, whether the jury found that Cappucci's failure to inspect the premises in the time frame required by statute constituted reckless disregard of health or safety under all relevant circumstances. The interrogatories asked these same questions with respect to the city. The jury replied no to all of these interrogatories.

The following principles govern our analysis of the plaintiff's claim. "[I]t is within the reasonable discretion of the presiding judge to require or to refuse to require the jury to answer pertinent interrogatories, as the proper administration of justice may require. . . . The trial court has broad discretion to regulate the manner in which interrogatories are presented to the jury, as well as their form and content. . . . Moreover, [i]n order to establish reversible error, the defendant must prove both an abuse of discretion and a harm that resulted from such abuse." (Citation omitted; internal quotation marks omitted.) *Earlington* v. *Anastasi*, 293 Conn. 194, 200, 976 A.2d 689 (2009).

After a review of the record, the plaintiff has failed to establish that the alleged abuse of discretion caused him harm. Even if an interrogatory had been provided allowing the jury to find that the conduct of Cappucci and the city was negligent, the interrogatories reveal that the jury found that both Cappucci and the city did not have notice of a violation of law with respect to the premises, and that their acts or omissions were not

reckless under all the relevant circumstances. Pursuant to § 52-557n (b) (8),[19] such findings by the jury entitled Cappucci and the city to immunity even had the jury also determined that they were negligent. Accordingly, we conclude that the plaintiff's claim is without merit.[20]

## VI

We turn now to the plaintiff's final claim that the court abused its discretion in denying his motion to set aside the verdict and order a new trial. Specifically, the plaintiff claims that based on undisputed testimony adduced at trial, the city had notice of a violation of a fire safety code at the premises and that Cappucci failed to inspect the premises pursuant to the requirement set forth in § 29-305. The plaintiff argues that on the basis of such testimony, the jury's findings were clearly contrary to the evidence. We disagree.

"The standard of review governing our review of a trial court's denial of a motion to set aside the verdict is well settled. The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . [The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach [its] conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some

---

[19] See footnote 14 of this opinion.

[20] In his brief to this court, the plaintiff summarily asserts, without advancing any substantive argument or citation to legal precedent, that in its charge to the jury the court misstated the law "in so much as the charge indicated that a municipality itself can not have reckless intent." In his reply brief, the plaintiff reiterates this claim and cites to two cases, neither of which stand for the proposition asserted. Accordingly, we determine this claim to be without merit and inadequately briefed, and, thus, we decline to review it. See *Hartford/Windsor Healthcare Properties, LLC* v. *Hartford*, 298 Conn. 191, 194 n.4, 3 A.3d 56 (2010) ("[b]ecause the plaintiffs do not cite any authority or develop their claim with analysis, we conclude that the claim is inadequately briefed").

mistake was made by the jury in the application of legal principles . . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb." (Internal quotation marks omitted.) *O'Donnell v. Feneque*, 120 Conn. App. 167, 171, 991 A.2d 643, cert. denied, 297 Conn. 909, 995 A.2d 637 (2010).

Upon examination of the record, we are unable to conclude that the jury's findings and verdict were contrary to the evidence. The complaint call report document entered into evidence indicated that the department had received a complaint of "no smoke detectors" at the premises on March 26, 2002, and the complaint case history document entered into evidence showed that the case was closed on April 4, 2002. Rizzo testified that once a complaint is received by the department, a department inspector is sent to investigate. Rizzo also testified that a case is closed only when an investigator determines that the issue is unsubstantiated or fully resolved by a tenant or owner. Rizzo further testified that pursuant to department policy, the fire marshal would not receive notice of a complaint received by the department unless it went unresolved. Furthermore, Jack Corbitt, an owner of the premises, and Cappucci both testified as to the presence of smoke detectors in the premises at the time of the fire. On the basis of this evidence, the jury reasonably could have found that both Cappucci and the city were without notice of a violation of the fire safety code, specifically, a lack of smoke detection equipment, at the premises.

In addition, the jury reasonably could have found that Cappucci's failure to inspect the premises pursuant to § 29-305 was not reckless[21] under all of the relevant

---

[21] In accordance with Connecticut law, the court instructed the jury that recklessness was "equivalent to a finding of wanton and wilful conduct, conduct which requires not only awareness of risk, but an actual intent to engage in conduct which the actor expects will cause harm." See *Matthiessen v. Vanech*, 266 Conn. 822, 833, 836 A.2d 394 (2003) ("While we have attempted

circumstances. Rizzo testified that Cappucci was not made aware of the March 26, 2002 complaint received by the department. Cappucci testified that he had not received a complaint regarding smoke detectors at the premises, he lacked the resources to enforce the statute, no other community in the state enforced the statute and that he focused the use of his resources to investigate complaints that did reach him and to make certification of occupancy inspections. On the basis of the above evidence, it was reasonable for the jury to conclude that Cappucci was not reckless in failing to inspect pursuant to § 29-305. Such a finding, combined with a finding that Cappucci was without notice of a problem with the smoke detection devices at the premises, entitled Cappucci to immunity from liability pursuant to § 52-557n (b) (8) for failure to inspect. Accordingly, we are unable to conclude that the court abused its discretion in denying the plaintiff's motion to set aside the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.

to draw definitional distinctions between the terms wilful, wanton or reckless, in practice the three terms have been treated as meaning the same thing. The result is that wilful, wanton, or reckless conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." [Internal quotation marks omitted.]).