******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TWILA WILLIAMS, ADMINISTRATRIX (ESTATE
OF TIANA N.A. BLACK) ET AL. *v.* HOUSING
AUTHORITY OF THE CITY
OF BRIDGEPORT ET AL.
(AC 36176)

Lavine, Mullins and Borden, Js.

*Argued March 16—officially released September 15, 2015*

(Appeal from Superior Court, judicial district of
Fairfield, Sommer, J.)

*John T. Bochanis*, with whom, on the brief, was
*Thomas J. Weihing*, for the appellant (plaintiff).

*Betsy Ingraham*, associate city attorney, for the
appellees (defendant city of Bridgeport et al.).

*Opinion*

BORDEN, J. The plaintiff Twila Williams, administratrix of the estates of Tiana N.A. Black, Nyaisja Williams, Tyaisja Williams, and Nyshon Williams (decedents), appeals from the trial court's summary judgment rendered in favor of the defendants.[1] The plaintiff claims that: (1) there is an issue of material fact as to whether the defendants are immune from liability pursuant to General Statutes § 52-557n (b) (8)[2] for failing to inspect the decedents' property; (2) the trial court improperly determined that other acts of negligence alleged against the defendants involved the exercise of a discretionary duty; and (3) even if such acts did involve a discretionary duty, the defendants' alleged negligence subjected the decedents to imminent harm. We affirm the judgment of the trial court as to the second claim. On the first and third claims, however, we reverse the judgment and remand the case to the trial court for further proceedings.[3]

This case stems from an apartment fire that took the lives of the decedents. The following undisputed facts and procedural history are relevant to this appeal. The decedents resided in the P.T. Barnum Apartments, a group of affordable housing units owned and maintained by the Housing Authority of the City of Bridgeport. The decedents' apartment was part of a multifamily residential unit,[4] located on the second and third floors of a three-story building. It had only a single point of ingress and egress, namely, a door that opened onto a porch and an external staircase attached to the building's second floor. Because the building lacked fire escapes, the only means of leaving the apartment was through the door. An individual seeking to leave from the bedrooms on the third floor of the apartment had to travel down the internal staircase, then traverse the apartment to access the door.

The Bridgeport fire marshal's office is required to conduct annual inspections of multifamily residential units within Bridgeport pursuant to General Statutes § 29-305 (b).[5] The office maintains eight full-time fire investigators, along with a deputy fire marshal and fire marshal, who together are responsible for inspecting more than four thousand multifamily homes in Bridgeport, in addition to inspecting commercial businesses and investigating the circumstances surrounding fires within the city. The Bridgeport tax assessor's office annually provides the fire marshal with a list of those multifamily units to be inspected. At the time of the incident in the present case, the list provided to the fire marshal's office did not include multifamily units considered affordable housing units because such housing is not included on Bridgeport's tax rolls.[6] The decedents' apartment qualified as affordable housing, and as a consequence, the fire marshal did not conduct a yearly inspection of the apartment.

On November 13, 2009, at approximately 1 a.m., a fire broke out in the oven in the kitchen of the decedents' apartment. The decedents perished in the conflagration. Both the state police and the Bridgeport Fire Department investigated the circumstances surrounding the fire and determined the cause to be accidental. During the course of their investigations, the state police also determined that, although all five smoke detectors within the apartment were functioning normally, the detectors were not interconnected in the sense that all five would be activated when one of them activated. Subsection 907.2.10.1.2.2 of the State Fire Safety Code, Regulations of Connecticut State Agencies § 29-292-17e, required the installation of interconnected smoke detectors when the apartment was last renovated in 1992.[7] Both agencies concluded that, given the locations of the decedents' bodies found within the apartment, it was likely that all four of the decedents were alerted to the fire and were attempting to leave.

The plaintiff commenced this suit against the defendants. In her amended complaint, the plaintiff alleged that the defendants failed to ensure that the decedents' apartment complied with the state building and fire safety codes, failed to remedy numerous defects in the premises, and failed to conduct a yearly fire safety inspection of the apartment. The plaintiff specifically alleged that the defendants knew or should have known about and remedied a number of asserted defects in the decedents' apartment, including the absence of fire escapes, fire suppression systems, photo-electric smoke detectors, fire alarm systems, fire sprinklers, fire extinguishers, and fire safety or prevention plans.

The defendants moved for summary judgment, claiming that as a matter of law they were immune from liability under § 52-557n. Specifically, the defendants argued that they were immune from liability for failing to inspect the decedents' apartment under § 52-557n (b) (8), and that the plaintiff could not identify a disputed material fact that would demonstrate any exception to the statutory immunity. Additionally, the defendants argued that the other acts of negligence alleged involved breaches of their discretionary duties. The defendants argued that as a consequence, they were immune from liability pursuant to § 52-557n (a) (2) (B).

As part of their motion for summary judgment, the defendants included affidavits from the defendants William Finch, the mayor of the city of Bridgeport; Brian Rooney, chief of the Bridgeport Fire Department; William Cosgrove, fire marshal for the city of Bridgeport; Dennis Buckley, zoning administrator for the city of Bridgeport; and Peter Pajaanen, building official for the city of Bridgeport. Each affiant, except Cosgrove, attested to a belief that he owed no duty to inspect the decedents' apartment.[8] Rooney and Cosgrove asserted in their affidavits that, as the fire chief and fire marshal

of Bridgeport, respectively, they were aware of and familiar with all the responsibilities and duties of the fire marshal's office.

Rooney, however, further stated that, to the best of his knowledge as the fire chief of Bridgeport, no statutory authority mandated that the decedents' apartment be inspected.[9] Thus, these two assertions in Rooney's affidavit—namely, that he was aware of and familiar with all of his duties and responsibilities as fire chief, and that no statutory authority mandated that he inspect the decedents' apartment—conflicted with each other. Similarly, Cosgrove, as fire marshal, stated that he was aware of and familiar with all the duties and responsibilities of his office, yet did not claim familiarity with the duty to inspect the decedents' apartment. In the plaintiff's opposition to the motion for summary judgment, she argued that § 52-557n (a) (2) (B) did not apply to the defendants' alleged negligence. The plaintiff specifically included the affidavit of Mark W. Tebbets, an expert on the state building code, alleging that there were numerous specific defects in the decedents' apartment and that the defendants were responsible for enforcing the building code.

While the defendants' motion for summary judgment was pending, Rooney was deposed by the plaintiff. At his deposition, Rooney testified that prior to making the affidavit he was not aware that his office was obligated by statute to inspect affordable housing. He had discovered subsequently, however, that § 29-305 (b) applied to affordable housing as well as to multifamily homes on the tax rolls, and therefore his office was supposed to inspect the decedents' apartment annually.[10]

The trial court granted the defendants' motion for summary judgment on July 19, 2013. In its memorandum of decision, the trial court agreed with the defendants, and concluded that the defendants were immune from liability under § 52-557n (b) (8) for their failure to inspect the decedents' property. The trial court specifically noted that the plaintiff did not adduce evidence that would raise a question of material fact as to whether the defendants' failure to inspect came within the "recklessness" exception to the statutory provision. It further concluded that the other claims alleged by the plaintiff involved negligent performance of discretionary duties, and the defendants were therefore immune under § 52-557n (a) (2) (B).

The plaintiff then filed a motion to reargue the motion for summary judgment. The plaintiff included a full copy of Rooney's deposition with her motion, and argued that it raised issues of fact as to whether the defendants' acts constituted recklessness under § 52-557n (b) (8). The trial court denied that motion on September 25, 2013. This appeal followed.

"The standard of review of motions for summary judgment is well settled. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Smigelski* v. *Dubois*, 153 Conn. App. 186, 197, 100 A.3d 954, cert. denied, 314 Conn. 948, 103 A.3d 975 (2014).

"[O]nce [the] defendant's burden in establishing his entitlement to summary judgment is met . . . the burden shifts to [the] plaintiff to show that a genuine issue of fact exists justifying a trial." (Internal quotation marks omitted.) *Rockwell* v. *Quintner*, 96 Conn. App. 221, 229, 899 A.2d 738, cert. denied, 280 Conn. 917, 908 A.2d 538 (2006). "[A] party opposing a summary judgment motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]t is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. . . . Such assertions are insufficient regardless of whether they are contained in a complaint or a brief. . . . Further, unadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact." (Citations omitted; internal quotation marks omitted). Id., 228–29.

"On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a moving party's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Smigelski* v. *Dubois*, supra, 153 Conn. App. 197.

I

The plaintiff first claims that there is a genuine issue of material fact as to whether the defendants' failure to inspect the decedents' apartment pursuant to § 29-305 (b) constituted a "reckless disregard for health and safety" under § 52-557n (b) (8). The plaintiff argues that consequently the defendants are not entitled to summary judgment. We agree with the plaintiff.

The parties agree, as do we, that this case presents, in the first instance, a question of statutory interpretation. "[I]ssues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determi-

nation of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Urgin* v. *Cheshire*, 307 Conn. 364, 379–80, 54 A.3d 532 (2012).

More specifically, the parties agree that this case is controlled by two provisions of § 52-557n, namely, § 52-557n (a) (2) (B) and (b) (8). Section 52-557n waives the traditional general immunity extended to municipalities for their tortious acts at common law. *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 47, 881 A.2d 194 (2005). Section 52-557n (a) (2), however, provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." This provision incorporates our prior common-law jurisprudence extending immunity to those acts requiring the exercise of judgment on the part of the municipal actor. Discretionary acts are distinct from those that are ministerial; a ministerial act involves prescribed conduct that does not afford the actor the ability to use his own judgment. Pursuant to § 52-557n (a) (2) (B), a municipality is extended immunity from liability for discretionary acts but *not* for ministerial acts. See *Durrant* v. *Board of Education*, 284 Conn. 91, 105–106, 931 A.2d 859 (2007).

Section 52-557n (b) sets forth a list of discrete situations in which immunity from liability shall be extended to municipal actors. *Ugrin* v. *Cheshire*, supra, 307 Conn. 381. Section 52-557n (b) specifically provides in relevant part: "Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from . . . (8) failure to make an inspection or making an inadequate or negligent inspection of any property . . . to determine whether the property complies with or violates any law or contains a hazard to health or safety,

unless the political subdivision had notice of such a violation of law or such a hazard or unless such failure to inspect or such inadequate or negligent inspection constitutes a reckless disregard for health or safety under all the relevant circumstances . . . ."

Thus, briefly stated, even if the conduct is ministerial under § 52-557n (a), if the claimed conduct constitutes a failure to inspect property, then the municipality is not liable for a failure to inspect unless the municipality had notice of a violation of law,[11] or the failure to inspect constituted a reckless disregard for health and safety under the circumstances. See *Urgin* v. *Cheshire*, supra, 307 Conn. 380–81. Put another way, as applied to this case, under § 52-557n (a) (2) (B), the defendants are immune from liability for tortious violations of a discretionary duty, but are not extended immunity for tortious violations of a ministerial duty. Under § 52-557n (b) (8), however, with respect to a duty to inspect, the defendants are immune from liability even if the failure to inspect is a ministerial duty, unless that failure to inspect constitutes a reckless disregard for health and safety, in which case they would not be immune from liability.

The parties disagree over the meaning of what constitutes a "reckless disregard for health or safety" under § 52-557n (b) (8). The plaintiff asserts that recklessness for the purpose of § 52-557n (b) (8) is a question of fact, and argues that Rooney's deposition and the statutory duty under § 29-305 (b) create a disputed issue of material fact as to whether the defendants were acting recklessly. The defendants argue that recklessness under § 52-557n (b) (8) is a question of law, and that as a matter of law they were not acting recklessly.

We conclude, however, that both parties miss the mark. What the term "reckless" means in § 52-557n (b) (8) is a question of statutory interpretation and, therefore, a question of law. Whether the defendants' conduct was "reckless" within that statutory meaning is a factual question and, for purposes of rendering summary judgment, the question is whether the facts of that conduct were egregious enough to permit a factual finding of recklessness.

Although our Supreme Court has not had the opportunity to consider the meaning of the particular exception at issue in the present case, the court has noted that § 52-557n (a) as a whole is ambiguous, and that its meaning is "far from plain."[12] *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 188, 592 A.2d 912 (1991). The history and language of § 52-557n stems from a "complicated web of legislative compromises that shaped the Tort Reform Act of 1986 . . . ." (Internal quotation marks omitted.) *Elliott* v. *Waterbury*, 245 Conn. 385, 408, 715 A.2d 27 (1998). What constitutes a "reckless disregard for health and safety" is particularly unclear, as the phrase is not defined within § 52-557n,

nor is the phrase found anywhere else within our General Statutes. Without any plain indicia of what this exception means for the purposes of a failure to inspect, we act in accordance with our Supreme Court's conclusion that the statute is ambiguous, and seek extratextual evidence as to the exception's meaning.

We look first at the legislative history of § 52-557n for guidance. Our Supreme Court has commented that the "legislative history of § 52-557n is worse than murky; it is contradictory. . . . The transcripts of legislative hearings on the bill are full of heated debate over [§ 52-557n], dealing with municipal liability, but the legislators seemed not to agree as to its meaning. The record of legislative debate does indicate that [§ 52-557n] was intended, in a general sense, both to codify and to limit municipal liability, but it also reflects confusion with respect to precisely what part of the preexisting law was being codified, and what part was being limited." (Footnote omitted.) *Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 188. As a consequence, the legislative history does not provide adequate guidance as to the meaning of a "reckless disregard for health and safety."

We therefore turn to our common-law jurisprudence for guidance. Under Connecticut common law, "[r]ecklessness requires a *conscious choice of a course of action* either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable [person], and the actor must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent. . . . More recently, we have described recklessness *as a state of consciousness with reference to the consequences of one's acts. . . . It is more than negligence, more than gross negligence. . . .* The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . The result is that . . . reckless conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Citations omitted; emphasis added; internal quotation marks omitted.) *Matthiessen* v. *Vanech*, 266 Conn. 822, 832–33, 836 A.2d 394 (2003).

We consider the common-law definition of recklessness instructive for purposes of interpreting the exception for recklessness in § 52-557n (b) (8). An individual's "conscious choice" separates recklessness from negligence. Id., 832. To achieve the distinction, it is not merely enough to fail to conduct an adequate inspection. A negligent inspection or failure to inspect occurs

when one knew or should have known that there was a duty to inspect, but failed to do so or did so below the standard of care. A failure to inspect that constitutes a reckless disregard for health or safety under § 52-557n (b) (8), however, must therefore be one in which an individual is aware of the duty to inspect, recognizes the possible impact on public or individual health or safety, and makes the *conscious decision* not to perform that duty.[13]

In applying this definition to the present case, we conclude that the failure of the defendants to inspect the decedents' apartment could, under the factual record presented in this case, reasonably be considered reckless.[14] Although all of the defendants, except Cosgrove, attested that they had no duty to inspect the decedents' apartment, both Rooney and Cosgrove also asserted their familiarity with the legal rules regarding the inspection of the apartment. Rooney explicitly claimed that he was familiar with "all duties and responsibilities that any agent, servant, and/or employee of the [Bridgeport] Fire Department had with respect to [the decedents'] apartment prior to November 13, 2009." Cosgrove made an essentially identical claim. From these assertions, a reasonable fact finder could infer that both Rooney and Cosgrove had read and made themselves familiar with those legal rules, including the legal obligation of an annual inspection mandated by § 29-305 (b); see footnote 5 of this opinion; and, therefore, that they were aware of that obligation. And, because of Rooney's conflicting assertion that there was no such obligation, the fact finder would be confronted with a factual question: were Rooney and Cosgrove aware or not of the legal obligation to inspect the decedents' apartment? Put another way, the fact finder would be presented with the question of whether to believe the assertion of familiarity and awareness prior to the fire, or the assertion that the awareness and familiarity did not arise until the time of the deposition, when Rooney explained how he had learned that he was so obligated.

Furthermore, it is undisputed that the defendants did not inspect the decedents' apartment. A reasonable juror could further conclude that given the defendants' familiarity with § 29-305 (b), the reason for that failure to inspect was due to a conscious disregard of the prescriptions in § 29-305 (b). Accordingly, the defendants' familiarity or not with the obligation to inspect under § 29-305 (b), and the reason for the defendants' failure to follow its mandate, gives rise to questions of material fact appropriately left to the fact finder, and are sufficiently raised so as to surmount the defendants' motion for summary judgment.

The defendants argue that regardless of how cognizant they were of the duty to inspect, the plaintiff has not provided any evidence upon which a juror could

reasonably conclude that the defendants recognized the possible impact of their failure to inspect on the health or safety of the decedents. We are not persuaded by this argument. It is counterintuitive to an average person that a purported expert, familiar with the duties and procedures of his own office, cannot appreciate the consequences when such duties are not carried out, especially when those duties involve the prevention of life-threatening fires. Thus, a reasonable juror could conclude that they would appreciate the natural consequences of their actions. We leave such determinations to the finder of fact.[15]

The degree of awareness the defendants had of the statutory requirement to inspect the decedents' apartment and the reason for the failure to inspect are questions of material fact that must be established to determine whether the defendants' actions were reckless. We therefore reverse the judgment of the trial court on this issue and remand the case with direction to deny the defendants' motion for summary judgment on the § 52-557n (b) (8) issue.

## II

The plaintiff also claims that the trial court improperly concluded, pursuant to § 52-557n (a) (2) (B),[16] that the defendants were immune from liability for their alleged negligence because the duty to act was discretionary, not ministerial, in nature. We disagree with the plaintiff, and conclude that the alleged negligence involved the exercise of the defendants' discretionary duties.

Because the present claim is governed by § 52-557n (a), it is useful at the outset to review our previous discussion of the statute in advance of addressing the plaintiff's claim. Under § 52-557n (a) (2) (B), a municipality and its agents are *not* liable for violations of discretionary duties, but *are* liable for violations of ministerial duties. This is because this subsection codifies the common-law doctrine of distinguishing between discretionary and ministerial acts. See *Coley* v. *Hartford*, 312 Conn. 150, 161–62, 95 A.3d 480 (2014).

With this standard in mind, we now return to our analysis of the plaintiff's claim under § 52-557n (a) (2) (B). In her amended complaint, the plaintiff alleged that, in addition to the defendants' failure to inspect the apartment pursuant to § 29-305 (b), the defendants were negligent for a variety of reasons, including a broad failure on the part of the defendants to enforce the state building and fire safety codes, and allegations that the defendants knew or should have known about and remedied the alleged defects in the decedents' apartment.[17] In their motion for summary judgment, the defendants claimed that they were immune from the plaintiff's claims pursuant to § 52-557n (a) (2) (B). The trial court concluded that the allegations of negligence

involved the exercise of only discretionary duties, and thus the defendants were immune under the statute.[18]

As noted previously, § 52-557n (a) (2) (B) "explicitly shields a municipality from liability for damages to person or property caused by the negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law. . . . Municipal officials are immune from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . . The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, municipal officials are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion. . . .

"Although the determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . there are cases where it is apparent from the complaint . . . [that the nature of the duty] and, thus, whether governmental immunity may be successfully invoked pursuant to . . . § 52-557n (a) (2) (B), turns on the character of the act or omission complained of in the complaint. . . . Accordingly, where it is apparent from the complaint that the defendants' allegedly negligent acts or omissions necessarily involved the exercise of judgment, and thus, necessarily were discretionary in nature, summary judgment is proper." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Coley* v. *Hartford*, supra, 312 Conn. 161–62. "The issue of governmental immunity is simply a question of the existence of a duty of care, and [our Supreme Court] has approved the practice of deciding the issue of governmental immunity as a matter of law." (Internal quotation marks omitted.) *Thivierge* v. *Witham*, 150 Conn. App. 769, 773–74, 93 A.3d 608 (2014).

We therefore turn to the plaintiff's claim that the trial court improperly concluded that the defendants' alleged negligence involved a discretionary duty to act. The plaintiff first argues that the alleged negligent enforcement of the fire safety and building codes constitutes a breach of a ministerial duty. We disagree. To enforce the fire safety code, a local fire marshal must determine whether there is a violation under the code and prescribe the necessary remedial measure. The General Statutes provide an appeal process for residents or developers who are unsatisfied with the assessment of the local fire marshal's enforcement of the code, or when they believe the code has been misinterpreted. See General Statutes § 29-291d. The interpretive process used by local fire marshals in analyzing the fire

safety code and applying it to a building under inspection bears the traditional hallmarks of an exercise of judgment, and as a consequence, is discretionary.[19] See *Segreto* v. *Bristol*, 71 Conn. App. 844, 851, 804 A.2d 928, cert. denied, 261 Conn. 941, 808 A.2d 1132 (2002).

The plaintiff additionally argues that due to the prescriptions found within the fire code, it was the defendants' ministerial duty to remedy the alleged defects. We are unconvinced. The plaintiff has not pointed to any portion of the fire safety code that mandates that the *defendants* provide a specific, prescribed, nondiscretionary remedy for the claimed defects. To the extent that a remedy is needed, the nature, form, and adequacy of that remedy under the fire safety code implicate "the exercise of judgment, and thus are discretionary acts." *Violano* v. *Fernandez*, 88 Conn. App. 1, 10, 868 A.2d 69 (2005), aff'd, 280 Conn. 310, 907 A.2d 1188 (2006); see also *Segreto* v. *Bristol*, supra, 71 Conn. App. 857. We therefore conclude that the defendants' alleged negligence involved discretionary acts.

### III

Because we have concluded that the defendants' alleged negligence implicates only their discretionary duties, the plaintiff can surmount § 52-557n (a) (2) (B) only if her claim falls within a delineated exception to discretionary act immunity articulated by our Supreme Court. See *Grady* v. *Somers*, 294 Conn. 324, 334–36, 984 A.2d 684 (2009). In this appeal, the only relevant exception is the identifiable person-imminent harm exception.[20] The plaintiff argues that all of the defendants' alleged acts of negligence involve discretionary duties that are subject to the exception. Because of recent changes in our jurisprudence to the identifiable person-imminent harm test, however; see *Haynes* v. *Middletown*, 314 Conn. 303, 101 A.3d 249 (2014); we reverse and remand the case to the trial court for reargument on this issue.

The identifiable person-imminent harm exception applies when circumstances make it apparent to a public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm. *Cotto* v. *Board of Education*, 294 Conn. 265, 273, 984 A.2d 58 (2009). "By its own terms, this test requires three things: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." (Internal quotation marks omitted.) Id. Failure to establish any of the three prongs is fatal to the plaintiff's claim that the defendants' conduct falls within the exception. Id.

In the present case, the trial court concluded that, because the plaintiff did not identify "a discrete time and place period at which the harm would occur" that was foreseeable to the defendants; see *Bonington* v.

*Westport*, 297 Conn. 297, 314, 999 A.2d 700 (2010); the defendants' acts did not fall within the identifiable person-imminent harm exception to discretionary act immunity. The court reached this conclusion through application of the "foreseeability test" model for determining imminent harm first articulated in *Burns* v. *Board of Education*, 228 Conn. 640, 648–50, 638 A.2d 1 (1994), overruled in part by *Haynes* v. *Middletown*, 314 Conn. 303, 322–23, 101 A.3d 249 (2014).

Our Supreme Court, however, has recently modified its approach to the imminent harm analysis, and this court is the first to analyze the change in detail. In *Haynes* v. *Middletown*, supra, 314 Conn. 303, which was decided after the summary judgment proceedings in the trial court in the present case, our Supreme Court revisited the issue of what creates an "imminent risk of harm" and established a new test that is different from the foreseeability test utilized by the trial court in the present case. We therefore turn our analysis to an examination of the new test in *Haynes*.

In *Haynes*, the minor plaintiff was injured while changing in the locker room at Middletown High School. The plaintiff and a number of other students engaged in horseplay, and the plaintiff was pushed into a locker with an exposed jagged and rusted edge. The locker had been in a broken condition since the beginning of that school year. In the ensuing action, the defendant municipality asserted as a special defense that maintenance of the locker was a discretionary duty not governed by any municipal policy or procedure, and therefore the municipality was immune from liability under § 52-557n (a) (2) (B). The plaintiff conceded that the duty to maintain the locker was ultimately discretionary, but asserted that under the circumstances the duty fell within the identifiable person-imminent harm exception. *Haynes* v. *Middletown*, supra, 314 Conn. 305–10. The trial court issued a directed verdict in favor of the defendants, which this court affirmed. See *Haynes* v. *Middletown*, 142 Conn. App. 720, 724–25, 66 A.3d 899 (2013), rev'd, 314 Conn. 303, 101 A.3d 249 (2014). Our Supreme Court, on certified appeal, reversed this court's judgment, and took the opportunity to reexamine the prevailing jurisprudence regarding imminent harm. See *Haynes* v. *Middletown*, supra, 314 Conn. 307.

The court in *Haynes* looked initially at the reasoning of *Evon* v. *Andrews*, 211 Conn. 501, 508, 559 A.2d 1131 (1989), and concluded that the court had implied in *Evon* that the imminence of harm was intrinsically related to the probability that the harm would occur due to the dangerous condition. *Haynes* v. *Middletown*, supra, 314 Conn. 317–18. This conclusion stood in contrast with the court's previous "foreseeability" analysis deriving from *Burns*, in which our Supreme Court had articulated a test that was based on the temporal nature

of the harm; essentially, that an imminent harm was one that emerged out of the existence of a temporarily dangerous condition limited in geographic scope that combined to identify a "foreseeable" class of victims. *Burns* v. *Board of Education*, supra, 228 Conn. 640, 648–50; see also *Purzycki* v. *Fairfield*, 244 Conn. 101, 108–10, 708 A.2d 937 (1998) (reiterating same foreseeability test), overruled in part by *Haynes* v. *Middletown*, 314 Conn. 303, 322–23, 101 A.3d 249 (2014). The court in *Haynes* noted that the test articulated by *Burns* was flawed, because the mere fact that a dangerous condition was temporary did not increase the probability that the condition would result in harm. *Haynes* v. *Middletown*, supra, 320. As the court in *Haynes* stated, "[i]f a condition created only a low risk of harm, the fact that the condition was temporary would not somehow convert a harm that might well have never occurred into one that was imminent." Id., 320–21.

Our Supreme Court in *Haynes* then stated the following: "we conclude that [the Supreme Court] in *Burns* incorrectly held that a foreseeable harm may be deemed imminent if the condition that created the risk of harm was only temporary and the risk was significant and foreseeable. Our statement in *Evon* v. *Andrews*, supra, 211 Conn. 508, that a harm is not imminent if it could have occurred at any future time or not at all was not focused on the *duration* of the alleged dangerous condition, but on the *magnitude of the risk* that the condition created. *Accordingly, the proper standard for determining whether a harm was imminent is whether it was apparent to the municipal defendant that the dangerous condition was so likely to cause harm that the defendant had a clear and unequivocal duty to act immediately to prevent the harm.*" (Emphasis altered; internal quotation marks omitted.) *Haynes* v. *Middletown*, supra, 314 Conn. 322–23. And when the court in *Haynes* spoke of the " 'magnitude of the risk' "; (emphasis omitted) id., 322; it specifically associated it with the *probability* that harm would occur, not the foreseeability of the harm. Id., 322–23. In articulating this revised standard, the court in *Haynes* sought to return to the implicit standard originally found in *Evon.* Id., 321. It rejected the foreseeability standard articulated in *Burns* and *Purzycki*, and overruled those cases to the extent that they had promulgated that standard. Id., 323. We therefore seek to apply the new test established by our Supreme Court.[21]

Thus, as we view *Haynes*, in order to qualify under the imminent harm exception, a plaintiff must satisfy a four-pronged test. First, the dangerous condition alleged by the plaintiff must be "apparent to the municipal defendant." Id. We interpret this to mean that the dangerous condition must not be latent or otherwise undiscoverable by a reasonably objective person in the position and with the knowledge of the defendant.[22] Second, the alleged dangerous condition must be likely

to have caused the harm suffered by the plaintiff. A dangerous condition that is unrelated to the cause of the harm is insufficient to satisfy the *Haynes* test. Third, the likelihood of the harm must be sufficient to place upon the municipal defendant a "clear and unequivocal duty"; id.; to alleviate the dangerous condition. The court in *Haynes* tied the duty to prevent the harm to the likelihood that the dangerous condition would cause harm. Id., 321. Thus, we consider "a clear and unequivocal duty"; id., 323; to be one that arises when the probability that harm will occur from the dangerous condition is high enough to *necessitate* that the defendant act to alleviate the defect. Finally, the probability that harm will occur must be so high as to require the defendant to act *immediately* to prevent the harm.

All four of these prongs must be met to satisfy the *Haynes* test, and our Supreme Court concluded that the test presents a question of law. Id., 313. If no reasonable juror could find that even any one of the prongs could be met, then the imminent harm exception is unavailing. See id., 326. We therefore consider this new test as applied to the facts of the present case.

The test articulated by the court in *Haynes* is highly fact specific. When analyzing the plaintiff's claims to see whether they fell within the imminent harm exception, however, the trial court specifically considered the foreseeability test articulated in *Burns*. The trial court applied this reasoning because the memorandum of decision was released before *Haynes*. The parties in this case argued the applicability of the identifiable person-imminent harm exception before this court on the bases of the record they made in the trial court, which was crafted in light of the exception under the law existing at that time. Because the trial court only considered the imminent harm portion of the identifiable person-imminent harm test and rejected the plaintiff's claims as unforeseeable under *Burns*, the parties obviously did not have an opportunity to address the new, broader, and more flexible standard articulated by our Supreme Court in *Haynes*.

Because the *Haynes* test is a significant departure from the foreseeability test previously considered for imminent harm, we think that the trial court should be given an opportunity to reconsider its decision on summary judgment, taking into account the *Haynes* test, specifically considering whether the identifiable person-imminent harm exception applies to any of the plaintiff's allegations under this new standard. Furthermore, the parties should be given the opportunity to present their submissions—factual and legal—in the summary judgment proceedings to conform to the new *Haynes* test. We therefore conclude that the appropriate action is to remand the case to the trial court for reargument only on the applicability of the identifiable person-imminent harm test to the alleged negligent dis-

cretionary acts of the defendants in accordance with the *Haynes* test.

The judgment is reversed only as to the issues of recklessness under § 52-557n (b) (8) and the applicability of the identifiable person-imminent harm exception to the doctrine of immunity for violations of a discretionary duty, and the case is remanded with direction to deny the motion for summary judgment and for further proceedings according to law on those issues.

In this opinion the other judges concurred.

[1] The plaintiff commenced suit against seven defendants, among whom were the following: the Bridgeport Fire Department; Brian Rooney, chief of the Bridgeport Fire Department; William Cosgrove, fire marshal for the city of Bridgeport; William Finch, mayor of the city of Bridgeport; Dennis Buckley, zoning administrator for the city of Bridgeport; and Peter Paajanen, building official for the city of Bridgeport. We refer to these six parties as the defendants for clarity. The seventh defendant, the Housing Authority of the City of Bridgeport, is not a party to this appeal.

[2] General Statutes § 52-557n (b) provides in relevant part: "[A] political subdivision of the state or any employee, officer, or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from . . . (8) failure to make an inspection or making an inadequate or negligent inspection of any property . . . to determine whether the property complies with or violates any law or contains a hazard to health or safety, unless the political subdivision had notice of such a violation of law or such a hazard or unless such failure to inspect or such inadequate or negligent inspection constitutes a reckless disregard for health or safety under all the relevant circumstances . . . ."

[3] We note that although the defendants relevant to this appeal may have quite different responsibilities and duties relative to the decedents, they have been treated by both sides and the trial court as essentially a single entity with the same statutory responsibilities. As a consequence, we do the same; however, as the parties and the trial court have not addressed what, if any, distinctions may exist among the defendants, we suggest that the issue be addressed on remand.

[4] Pursuant to the zoning and subdivision regulations for the city of Bridgeport, a "multifamily" unit is a structure containing more than three residential units each capable of supporting a single family. See Bridgeport Zoning Regs., art. II, § 2-2.

[5] General Statutes § 29-305 (b) provides in relevant part: "Each local fire marshal shall inspect or cause to be inspected, at least once each calendar year . . . in the interests of public safety, all buildings and facilities of public service and *all occupancies regulated by the Fire Safety Code* within the local fire marshal's jurisdiction . . . ." (Emphasis added.)

[6] General Statutes § 8-58 provides in relevant part: "The property of [a housing] authority or of any agency or instrumentality designated or appointed by an authority shall be exempt from all local and municipal taxes . . . ."

[7] Subsection 907.2.10.1.2.2 of § 29-292-17e of the Regulations of Connecticut State Agencies provides in relevant part: "When alterations or additions requiring a permit occur in . . . [multifamily] occupancies . . . the entire dwelling unit shall be provided with smoke alarms located as required for new dwellings. Such smoke alarms within existing spaces may be battery operated and are not required to be . . . interconnected unless other remodeling considerations require removal of wall and ceiling coverings which would facilitate concealed interconnected wiring."

It is undisputed that in the 1992 renovation of the P.T. Barnum apartments, the plans called for the installation of interconnected smoke detectors.

[8] Cosgrove's affidavit did not express an opinion as to whether he owed a duty to inspect the decedents' apartment.

[9] In his affidavit, Rooney stated the following:

"2. With respect to the PT Barnum Apartment, specifically Building 12, Apartment 205 (hereinafter 'the apartment'), I am aware of and familiar with all duties and responsibilities that any agent, servant and/or employee of the [Bridgeport] Fire Department had with respect to that apartment at any time prior to November 13, 2009. . . .

"6. At all relevant times prior to November 13, 2009, no agent, servant

and/or employee of the Fire Department (not including members of the Fire Marshal's Office) was required, prescribed or directed by any rule, ordinance, policy, procedure, statute, regulation, law, or any other type of directive, to ever inspect the apartment at any prescribed time intervals, or to inspect the apartment at any specific time for the presence or absence of any hazard or condition . . . ."

Similarly, Cosgrove attested to the following in his affidavit:

"3. With respect to the PT Barnum Apartment, specifically Building 12, Apartment 205 (hereinafter 'the apartment'), I am aware of and familiar with all duties and responsibilities that any agent, servant and/or employee of the [Bridgeport] Fire Marshal's Office had with respect to that apartment at any time prior to November 13, 2009."

[10] Rooney testified in relevant part during his deposition:

"[The Plaintiff's Counsel]: Chief Rooney, my question to you is, you now realize that the fire, that the apartment in this case, apartment 205, at the P.T. Barnum Apartments, should have been inspected annually?

"[Rooney]: According to the statute, yeah.

"[The Plaintiff's Counsel]: Okay. And it is not only on the basis of inspection that, or a complaint, that the apartment is to be inspected but it's to be inspected annually? Regardless as to whether there is a complaint or not?

"[Rooney]: Correct.

"[The Plaintiff's Counsel]: And that this knowledge came to you between April 25, 2013, when you signed this, to today's deposition on July 11, 2013?

"[Rooney]: Yes.

"[The Plaintiff's Counsel]: And how did that information come to your knowledge?

"[The Defendants' Counsel]: Objection to the extent it involves any discussions where counsel was present.

"[The Plaintiff's Counsel]: Go ahead. I'm not asking about conversations you had with any attorney representing the city of Bridgeport, but how did you get the knowledge?

"[Rooney]: Through the attorney."

[11] The plaintiff concedes that this exception does not apply to the present case, as there is no evidence that the defendants had any actual notice of a violation before the fire.

[12] Our Supreme Court has considered the specific meaning of § 52-557n (b) (8) in a single case, *Ugrin* v. *Cheshire*, supra, 307 Conn. 364. In *Urgin* the court only interpreted the plain meaning of the word "unless" in § 52-557n (b) (8) to create clear exceptions to the blanket immunity for negligent or nonexistent inspections. *Ugrin* v. *Cheshire*, supra, 381–83. Similarly, in *Smart* v. *Corbitt*, 126 Conn. App. 788, 814–15, 14 A.3d 368, cert. denied, 301 Conn. 907, 19 A.3d 177 (2011), this court concluded that a jury reasonably could have determined that the failure to inspect a building pursuant to § 29-305 (b) was not reckless under the facts of that case. This court, however, did not address what constitutes a "reckless disregard" under § 52-557n (b) (8).

[13] This distinction maintains the separation between the recklessness and notice exceptions under § 52-557n (b) (8). The notice exception addresses actual notice of a *defect* that would violate legal standards or threaten health or safety. The recklessness exception as defined in the present case addresses awareness of a *duty* to inspect.

[14] The plaintiff argues that, as "everyone is presumed to know the law," the defendants were presumptively aware of their duty to inspect under § 29-305, and thus the failure to do so constituted reckless conduct. See *State* v. *Knybel*, 281 Conn. 707, 713, 916 A.2d 816 (2007). We note that the plaintiff's broad interpretation of that presumption essentially undermines the basic premise of § 52-557n (b) (8). Were we to adopt the plaintiff's interpretation of awareness, we would essentially create a form of per se recklessness, in which any time a municipality had a duty to follow statutory guidelines, failure to do so would constitute a reckless act. No such legal construct exists, nor has it ever existed to the best of our knowledge, within our jurisprudence. We therefore decline to adopt this interpretation.

[15] We note that the lack of resources provided to the fire marshal's office may make carrying out such a duty difficult, and have at least once implied the opposite of recklessness. See, e.g., *Smart* v. *Corbitt*, 126 Conn. App. 788, 808 and n.15, 14 A.3d 368, cert. denied, 301 Conn. 907, 19 A.3d 177 (2011). The reasonableness or recklessness of that inability to act, however, is a question that is best left, as it was in *Smart*, with the fact finder.

[16] General Statutes § 52-557n (a) provides in relevant part: "(2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an

official function of the authority expressly or impliedly granted by law."

[17] Specifically, the plaintiff alleged that the proximate cause of the decedents' deaths was that the defendants:

"a. Knew or should have known that the above described apartment and building did not have a safe, reasonable and/or adequate means of egress provided to the decedents to exit the above described apartment/building;

"b. Knew or should have known that the above described apartment and/or building did not have a safe, reasonable and/or adequate means of egress provided to the decedents to exit the above described apartment/building particularly during a fire;

"c. Knew or should have known that the above described apartment and building in which the decedents died did not comply with applicable federal, state and local law, codes and/or regulations, including fire and building safety regulations, codes and laws and/or zoning laws, codes and/or regulations;

"d. Knew or should have known that the above described building and apartment was not consistent with and in conformity with recognized standards for building safety, fire safety and building and zoning laws;

"e. Knew or should have known that the above described apartment and building was previously renovated, redesigned and/or remodeled and a fire escape and/or other reasonable means of egress from the apartment and/or building was not provided for use of the decedents;

"f. Knew or should have known that the above described apartment and building did not have adequate, sufficient and/or proper fire suppression and fire/smoke detection devices, including the failure to have proper smoke detectors in the apartment and building;

"g. Knew or should have known that the above described apartment and/or building did not have adequate and/or proper fire suppression and/or fire detection devices;

"h. Failed to provide and/or install photo-electric smoke detectors in the above described apartment and building where the decedents were caused to die and/or ensure such devices were installed;

"i. Knew or should have known that the above described apartment or building did not have a reasonable and/or proper fire alarm system;

"j. Failed to ensure that the above described apartment and/or building had a reasonable and/or proper fire alarm system;

"k. Knew or should have known that the above described apartment or building did not have a fire sprinkler system to ensure the safety of the residents, including the decedents;

"l. Failed to ensure that the above described apartment and/or building had a fire sprinkler system to ensure the safety of the residents of said apartment and/or building, including the decedents;

"m. Knew or should have known that a fire extinguisher was not provided for use of tenants in the above described building or apartment, including the decedents;

"n. Knew or should have known that the above described apartment and/or building was not safe for use by tenants, including the decedents and /or contained hazards making it not safe for use by tenants, including the decedents;

"o. Failed to provide fire safety training including fire drill/escape training for residents of buildings and apartments in the city of Bridgeport, including the decedents;

"p. Failed to formulate and implement or ensure implementation of fire safety/prevention strategies and plans for residents of buildings and apartments in the city of Bridgeport, including the decedents;

"q. Knew or should have known that the fire and/or building inspections of the above described apartment and/or building in which the decedents were caused to die were not conducted although such inspections were required to be performed, including requirements pursuant to . . . [§ 29-305 (b)]."

We note, of course, that we are not concerned at this stage of the proceedings with the legal adequacy of any or all of these allegations, or with any question of causation.

[18] Because both parties agree that the defendants' failure to inspect the apartment pursuant to § 29-305 (b) constitutes a ministerial act and thus is not immunized under § 52-557n (a) (2) (B), we confine our analysis in this section to those remaining allegations of negligence by the defendants that the plaintiff made in her compliant. See footnote 17 of this opinion.

[19] The same process of judgment and appeal is utilized when enforcing the state building code, and thus enforcement of that code also constitutes a discretionary act. See General Statutes § 29-252 (d); cf. *Segreto* v. *Bristol*, supra, 71 Conn. App. 857 ("[d]eterminations as to what is reasonable or proper under a particular set of circumstances necessarily involve the exercise of judgment and are, therefore, discretionary in nature").

[20] The plaintiff does not allege either of the two other recognized exceptions to discretionary act immunity, namely, that the act involved wanton-

ness or intent to injure, or that a statute specifically provides for a cause of action against the defendants due to their negligence. *Doe* v. *Petersen*, 279 Conn. 607, 615–16, 903 A.2d 191 (2006).

[21] We note briefly that retroactive application of *Haynes* is appropriate in this case. "[A]s a general rule, judicial decisions apply retroactively. . . . A decision will not be applied retroactively only if (1) it establishes a new principle of law, either by overruling past precedent on which the litigants have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . (2) given its prior history, purpose and effect, retroactive application of the rule would retard its operation; and (3) retroactive application would produce substantial inequitable results, injustice or hardship." (Internal quotation marks omitted.) *Avolletta* v. *State*, 152 Conn. App. 177, 186 n.2, 98 A.3d 839, cert. denied, 314 Conn. 944, 102 A.3d 1116 (2014). As we are remanding this case to the trial court for proper consideration under *Haynes*, none of these considerations is at issue in the present matter.

[22] The majority in *Haynes* explicitly took no position on whether a defect that is "apparent" to a municipal defendant required actual knowledge of the defective condition; see *Haynes* v. *Middletown*, supra, 314 Conn. 323 n.15; although Justice Eveleigh's concurrence stressed his belief that the language of § 52-557n (a) (1) implied that a form of constructive knowledge would be sufficient given the circumstances of that case. Id., 338–39 (*Eveleigh, J.*, concurring). It is not clear in *Haynes* whether the test is subjective— that the defect was actually apparent to the defendant—or objective—that the defect would be apparent to a reasonable person in the position of the municipal defendant.

We note that our Supreme Court, in one of its earliest cases, considered an apparent defect one that an individual would have been *presumed* to have observed based on the nature of the defect, implying that a defect that is apparent does not need to be actually observed. See *Sherwood* v. *Salmon*, 5 Day 439, 449–50 (1813). It is the same definition of an "apparent defect" provided for in Black's Law Dictionary. See Black's Law Dictionary (9th Ed. 2009). We surmise, therefore, that the test is an objective one; that so long as a reasonable person in the position of the municipal defendant would be able to observe the defect, it is understood that the defect would be apparent to a municipal defendant. This conclusion also maintains consistency between the apparentness criteria used for determining imminent harm, and the apparentness criteria used in the third prong of the identifiable person-imminent harm exception to determine whether an official's conduct is likely to subject the identifiable person to that imminent harm. See *Edgerton* v. *Clinton*, 311 Conn. 217, 231–32, 86 A.3d 437 (2014) (apparentness test for third prong of identifiable person-imminent harm exception is objective test).