******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

JOHN DOE *v.* STEPHEN FLANIGAN ET AL.
(AC 42567)

Elgo, Bright and Moll, Js.*

*Syllabus*

The plaintiff sought to recover damages from, inter alia, the defendant city of Waterbury for injuries that he suffered when F, a former police officer employed by the city, allegedly pushed the plaintiff to the ground and handcuffed him, and a third party, C, assaulted the plaintiff by placing a sex toy against his buttocks. The plaintiff's operative complaint alleged, inter alia, that the city was liable pursuant to statute (§ 52-557n) for the damages he sustained as a result of F's negligence. The court rendered partial summary judgment in favor of the city, concluding that there were no genuine issues of material fact as to whether F had engaged in wilful, rather than negligent misconduct, and that the identifiable victim subject to imminent harm exception to governmental immunity did not apply to the plaintiff's allegation that F failed to protect him from C's sexual assault. Subsequently, the plaintiff withdrew his remaining claims and appealed to this court. *Held*:

1. The trial court erred in granting the city's motion for summary judgment as to the plaintiff's claim that F negligently pushed him to the ground and handcuffed him: the plaintiff proffered sufficient evidence to demonstrate the existence of genuine issues of material fact with respect to whether F's conduct was wilful or negligent, as a reasonable jury could have concluded that the plaintiff was willingly handcuffed by F and was not, as the court concluded, an unwilling participant, there was an issue as to whether F was demonstrating the professional use of handcuffs on the plaintiff, and there was evidence in the record that F had shown a pattern of poor judgment while acting in his duties as a police officer, and the fact that F's use of handcuffs was in violation of the city's policy did not make his conduct per se wilful; moreover, the city's claim that this court should affirm the trial court's judgment on the alternative ground that F was not acting within the scope of his employment when he pushed the plaintiff to the ground and handcuffed him was unavailing, as there was evidence in the record that F was acting within his period of employment, the location of the assault was within F's normal jurisdiction, F frequently visited this location both while on and off duty and, at the time of the assault, F was on his way to an activity related to his role as a police officer in which he often demonstrated the use of handcuffs and he was dressed in full police uniform issued by the city, including his duty belt with his handcuffs and weapons.

2. The trial court erred in rendering summary judgment in favor of the city on the basis that there was no genuine issue of material fact as to whether it was apparent to F that the plaintiff was an identifiable victim subject to imminent harm, as the city never raised this defense in its motion; the city argued only that F's conduct was wilful and outside the scope of his employment and, thus, the plaintiff never had the opportunity or reason to make the argument that this exception to discretionary act immunity applied.

Argued June 19—officially released November 24, 2020

*Procedural History*

Action to recover damages for, inter alia, the named defendant's alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the plaintiff filed an amended complaint; thereafter, the plaintiff filed a second amended complaint; subsequently, the court, *Shah, J.*, granted in part the motion for summary judgment filed by the defendant city of Waterbury and rendered judgment thereon; thereafter, the plaintiff withdrew his remaining

claims and appealed to this court. *Reversed; further proceedings.*

*Christopher DeMarco*, for the appellant (plaintiff).

*Daniel J. Foster*, corporation counsel, for the appellee (defendant city of Waterbury).

*Opinion*

BRIGHT, J. This appeal arises out of an incident in which a third party, Charles Fullenwiley, assaulted the plaintiff, John Doe,[1] by placing a sex toy against his buttocks after the named defendant, Stephen Flanigan, at the time a police officer employed by the defendant city of Waterbury, allegedly pushed the plaintiff to the ground and handcuffed him.[2] The plaintiff appeals from the summary judgment rendered by the trial court in favor of the defendant on the fourth count of the plaintiff's second amended complaint, which alleged that, pursuant to General Statutes § 52-557n, the defendant was liable to the plaintiff for the injuries he sustained arising out of Flanigan's negligent conduct.[3] The fourth count of the plaintiff's complaint incorporated the allegations of the third count, which alleged that Flanigan acted negligently when he (1) pushed the plaintiff to the ground and handcuffed him, (2) failed to protect the plaintiff from Fullenwiley's assault, and (3) failed to report Fullenwiley's assault. On appeal, the plaintiff claims that the court erred in concluding that there were no genuine issues of material fact as to whether (1) Flanigan engaged in wilful, rather than negligent, misconduct when he pushed the plaintiff to the ground and handcuffed him, and (2) the identifiable victim subject to imminent harm exception to governmental immunity did not apply to the plaintiff's allegation that Flanigan failed to protect the plaintiff from being sexually assaulted by Fullenwiley.[4] Additionally, the defendant argues that we can affirm the judgment of the trial court on the alternative ground that Flanigan was not acting within the scope of his employment, and, therefore, the defendant could not be liable.

As to the first issue raised by the plaintiff, we conclude that there are genuine issues of material fact as to whether Flanigan's conduct was wilful or negligent. We also reject the defendant's claimed alternative ground for affirmance because there are genuine issues of material fact as to whether Flanigan, in fact, was acting within the scope of his employment when he pushed the plaintiff to the ground and handcuffed him. As to the second issue raised by the plaintiff, we conclude that the court improperly rendered summary judgment on a ground not argued before it. Consequently, we reverse the judgment of the trial court.

The following facts, viewed in the light most favorable to the plaintiff, and procedural history are relevant to our resolution of the plaintiff's claims. At all times relevant to this appeal, the plaintiff was a minor under sixteen years of age, and Flanigan was employed by the defendant as a police officer. Flanigan took part in the Police Explorers, a program run by the Waterbury Police Department in which young people between the ages of fourteen and twenty-one would meet at the Waterbury Police Department on a monthly basis in

order to learn more about becoming police officers. As part of the program, Flanigan frequently handcuffed juveniles as a way to demonstrate the use of handcuffs.

Beginning in July, 2005, the plaintiff worked with Fullenwiley at his place of business, an electronics store in Waterbury called World Technology. Flanigan, who had been friends with Fullenwiley since 2003, frequently visited the store to "hang out," often doing so while on duty. While at the store, Flanigan would "horse around" with the young people there, among whom were Fullenwiley's son and the plaintiff. In addition to horseplay, Flanigan, on more than one occasion, would handcuff young people at the store "because they wanted to see what it was like."

In the spring of 2006, Flanigan stopped at World Technology on his way to the Police Explorers. The plaintiff, while at World Technology, asked Flanigan to demonstrate the use of his handcuffs. Flanigan pushed the plaintiff to the ground and handcuffed him. While the plaintiff was restrained on the ground, Fullenwiley kneeled on his back and pushed a sex toy against his buttocks. Flanigan watched this incident unfold and took photographs of Fullenwiley and the plaintiff. In October, 2009, the plaintiff commenced the underlying action against Flanigan and the defendant for the injuries that he sustained arising out of this incident.

On January 22, 2015, the plaintiff filed the operative four count complaint (second amended complaint) against Flanigan and the defendant. In the first and second counts, the plaintiff alleged that Flanigan falsely arrested the plaintiff and participated in a sexual assault against him. In the third count, the plaintiff alleged that Flanigan was negligent in pushing the plaintiff to the ground and handcuffing him, failing to protect the plaintiff from a sexual assault, and failing to report the sexual assault. Counts one through three subsequently were settled as against Flanigan himself, leaving only the fourth count of the complaint, which was brought against the defendant. In the fourth count, which incorporated by reference paragraphs 1 through 13 of the third count, the plaintiff alleged that, pursuant to § 52-557n, the defendant was liable to the plaintiff for the carelessness and negligence of Flanigan. The specific allegations of negligence in the third count at issue are as follows:

"6. . . . Flanigan would occasionally engage in 'horseplay' with minors at World Technology and would demonstrate the use of handcuffs to the minors present at World Technology.

"7. In the spring of 2006, while the plaintiff was at World Technology . . . Flanigan, in an attempt to demonstrate the use of handcuffs, pushed the plaintiff to the ground and put his handcuffs on the plaintiff.

"8. While the plaintiff lay on his stomach, and without

. . . Flanigan knowing what was about to happen . . . Fullenwiley kneeled on the plaintiff's back and placed a [sex toy] against the plaintiff's buttocks.

"9. . . . Fullenwiley was ultimately arrested and convicted for various criminal offenses, among them the above-described incident.

"10. When . . . Flanigan observed Fullenwiley place a [sex toy] against the plaintiff's buttocks, he knew or should have known that . . . Fullenwiley's conduct was illegal and that as a police officer, he had a duty to protect the minor plaintiff from such conduct, yet he failed to take any law enforcement action whatsoever.

"11. As a police officer . . . Flanigan was mandated to report incidents of child sexual abuse to the Department of Children and Families, thus making such a report nondiscretionary, yet he failed to make such a report.

"12. . . . Flanigan was negligent in that he failed to act in accordance with the scope of his duties as a police officer so as to protect the minor plaintiff from such conduct and to prevent such conduct from occurring.

"13. As a direct and proximate result of . . . Flanigan's negligence the plaintiff sustained physical injury, extreme emotional distress, fear and apprehension. From all of the aforesaid injuries the plaintiff has suffered and will suffer psychological pain and mental anguish, all of which are, or are likely to be, permanent in nature."[5]

On May 19, 2015, the defendant responded with an answer and nine special defenses. On November 22, 2016, the defendant filed a motion for summary judgment.[6] In addressing the motion for summary judgment, the court treated the allegation of negligence against the defendant as setting forth three distinct claims. The court summarized the allegations as follows: "The plaintiff alleges that the [defendant] is liable for (A) Flanigan's affirmative acts of pushing the plaintiff to the ground and handcuffing him; (B) Flanigan's failure to protect the plaintiff from an assault by Fullenwiley; and (C) Flanigan's failure to make a mandatory report of child abuse."

In its memorandum in support of its motion for summary judgment, the defendant set forth the same argument as to all three bases for liability, namely, that Flanigan engaged in misconduct that was both wilful and outside of the scope of his official duties as a police officer. In support of its argument, the defendant stated: "The pleadings together with the sworn statements and testimony of the plaintiff clearly establish undisputed facts which can only lead to the conclusion that . . . Flanigan was not acting within the scope of his employment or official duties and that he had committed acts or omissions constituting wilful misconduct." The

defendant argued that "[u]nder no scenario set forth by the plaintiff in an attempt to replead his case, can the plaintiff avoid the undisputed facts which the plaintiff himself asserts, that Flanigan pushed him to the ground, handcuffed him, participated in and photographed the incident where Fullenwiley placed a [sex toy] against the [plaintiff's] buttocks. There is no circumstance under which these activities of . . . Flanigan could be found to be within the scope of his employment or official duties. Additionally there can be no dispute that Flanigan's actions as testified to by the plaintiff were acts which constituted wilful misconduct." To the extent that Flanigan's actions constituted wilful misconduct beyond the scope of his employment, the defendant maintained that it could not be vicariously liable for such conduct under § 52-557n.

On February 27, 2017, the plaintiff filed a memorandum in opposition to the defendant's motion for summary judgment. In his memorandum, the plaintiff argued that the defendant failed to establish the absence of any genuine issue of material fact as to whether Flanigan had acted negligently, stressing that a reasonable fact finder could find that Flanigan had acted negligently, not wilfully. Specifically, the plaintiff stated: "It appears, based on statements he made, that Flanigan was not aware of the [defendant's] prohibition on the use of handcuffs for such purposes. Thus, a genuine issue exists as to whether Flanigan was negligent when he demonstrated the use of handcuffs on juveniles at World Technolog[y]. . . . The jury may determine that Flanigan had no idea what Fullenwiley was about to do after the plaintiff was placed on the ground and handcuffed. Flanigan may have negligently believed that he was simply demonstrating a restraint procedure, as he stated in his deposition and in police reports. After Fullenwiley held the [sex toy] to the plaintiff's buttocks, Flanigan had an absolute duty to arrest Fullenwiley, report the incident to his superiors, and alert [the Department of Children and Families]. It is for the trier of fact to determine whether his failure to do so was negligent or not." The plaintiff argued further that there exists a genuine issue of material fact as to whether Flanigan's actions—in demonstrating the use of handcuffs on the plaintiff—could be considered within the scope of his official duties as a police officer. The plaintiff argued that "[t]he plaintiff does not allege in the fourth count that Flanigan restrained the plaintiff so that Fullenwiley could sexually assault him; the allegation is that Flanigan negligently engaged in conduct without knowing what Fullenwiley was about to do. Thus, Flanigan's actions may still be considered within the scope of his employment if he thought, even mistakenly, that he was demonstrating the use of handcuffs."

On July 18, 2017, the court issued its memorandum of decision granting in part and denying in part the defendant's motion for summary judgment. The court

addressed each of the three allegations of negligence in turn. As to the first allegation of negligence, that Flanigan was negligent in pushing the plaintiff to the ground and handcuffing him, the court found that the plaintiff had made a "colorable argument that a genuine issue of material fact exists as to whether Flanigan was acting in the scope of his employment or official duties at the time he pushed the plaintiff to the ground and placed him in handcuffs";[7] however, the court ultimately declined to reach that issue, finding instead that "[t]he only conclusion that can be reached . . . is that Flanigan's acts of pushing the plaintiff to the ground and unlawfully restraining him constitute[d] wilful misconduct. . . . Indeed, the plaintiff's allegation that Flanigan was demonstrating the use of handcuffs coupled with the evidence indicating that the plaintiff was not a willing participant in the demonstration buttress this determination. Moreover, the [defendant] submitted evidence that Flanigan's use of handcuffs in the manner alleged was in violation of the [defendant's] policies. . . . Accordingly, summary judgment is granted in favor of the [defendant] as to liability for Flanigan's acts of pushing the plaintiff to the ground and placing him in handcuffs."

With respect to the second allegation of negligence, that Flanigan had a duty as a police officer to protect the plaintiff from Fullenwiley's actions, the court did not consider whether Flanigan was acting in the scope of his employment or whether his actions were wilful, instead disposing of the claim on governmental immunity grounds, an argument that was not advanced by the defendant. The court noted: "A police officer's actions in carrying out [his or her typical duties] are discretionary and typically afforded governmental immunity. See *Smart* v. *Corbitt*, 126 Conn. App. 788, 800, 14 A.3d 368, cert. denied, 301 Conn. 907, 19 A.3d 177 (2011). . . . However, governmental immunity does not apply when 'the circumstances make it apparent to [a] public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm. . . . ' *Merritt* v. *Bethel Police Dept.*, 120 Conn. App. 806, 812, 993 A.2d 1006 (2010)." (Citation omitted.) Applying these principles, the court determined that this exception to governmental immunity did not apply. In reaching that determination, the court stated that, "[b]ased on the evidence submitted, there is no genuine issue of material fact that Flanigan knew that the plaintiff was at risk of imminent harm or that Flanigan's nonresponse to the imminent danger would likely subject the plaintiff to that harm. The plaintiff's complaint alleges that Fullenwiley acted 'without . . . Flanigan knowing what was about to happen' . . . and there is no evidence in the record from which a reasonable jury could determine that it was apparent to Flanigan that Fullenwiley would place a [sex toy] against the plaintiff's buttocks. . . . Thus, summary judgment

is granted in favor of the [defendant] as to liability for Flanigan's failure to act to protect the plaintiff.'' (Citations omitted.)

As to the third allegation of negligence, whether Flanigan had a mandatory duty to report Fullenwiley's sexual assault of the plaintiff to the Department of Children and Families, the court determined that the defendant failed to satisfy its burden of proving that no genuine issue of material fact existed. Consequently, the court denied the defendant's motion for summary judgment as to its liability for Flanigan's failure to report. As we stated in footnote 4 of this opinion, however, the plaintiff subsequently withdrew his claim against the defendant as to its liability arising out of Flanigan's failure to report.[8] Accordingly, we do not consider this claim, but we do note for the purposes of this appeal that in addressing this issue the court found that "the [defendant] has failed to show that no genuine issue of material fact remains as to whether Flanigan was acting in the scope of his employment at the time he witnessed the plaintiff's abuse.'' The court specifically noted that "the evidence submitted indicates that Flanigan stopped at World Technology while on his way to volunteer with the Police Explorers; World Technology was within Flanigan's normal jurisdiction; Flanigan often stopped at World Technology, while both on and off duty; and, at the time of the abuse, Flanigan was dressed in full police uniform with his duty belt, which included his handcuffs (and presumably his weapon)—all of which were issued by the [defendant].'' This appeal followed. Additional facts will be set forth as necessary.

Initially, we set forth our standard of review. "The standard of review of a trial court's decision granting summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The courts are in entire agreement that the moving party . . . has the burden of showing the absence of any genuine issue as to all the material facts . . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the [nonmoving] party must present evidence that demonstrates the existence of some disputed factual issue. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically

correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Citations omitted; internal quotation marks omitted.) *Lucenti* v. *Laviero*, 327 Conn. 764, 772–73, 176 A.3d 1 (2018).

I

A

On appeal, the plaintiff first claims that the court erred in rendering summary judgment in favor of the defendant as to his claim that Flanigan negligently pushed the plaintiff to the ground and handcuffed him because there is a genuine issue of material fact as to whether Flanigan engaged in negligent or wilful misconduct. We agree with the plaintiff.

The following additional facts are relevant to our resolution of the plaintiff's claim. In support of his memorandum in opposition to the defendant's motion for summary judgment, the plaintiff submitted the transcript of Flanigan's March 5, 2013 deposition. At his deposition, Flanigan testified about his participation in the Police Explorers. Flanigan testified that he had handcuffed juveniles who were not under arrest "numerous times with the Police Explorers" as a way to demonstrate the use of handcuffs. When asked if he had ever handcuffed a juvenile who was not under arrest outside of the Police Explorers program, Flanigan testified that he could recall two instances: one time with Fullenwiley's son and another time with the plaintiff. With respect to the plaintiff, Flanigan testified that he handcuffed him for a period of "about ten seconds" because "he asked me to."

Flanigan, in a statement given to the police on July 13, 2009, signed under penalty of perjury, stated that the incident with the plaintiff occurred when he was on his way to a Police Explorers meeting.[9] Flanigan averred further that, while at the store, "[t]he kids began to look at my duty belt and wanted to play with my handcuffs. I remember that . . . [the plaintiff was] among the kids that were there. I asked [Fullenwiley] if I could handcuff the boys as part of a demonstration. I handcuffed . . . [the plaintiff] and then uncuffed [him] right away after putting the cuffs on. I did not think it was a big deal because that was what I was going to teach the Explorers that night."

In addition to Flanigan's deposition testimony and police statement, the plaintiff also relied on Fullenwiley's written statement to the Waterbury Police Department, dated March 31, 2010. In his statement, Fullenwiley averred that Flanigan would horse around with the young people at his store, "but it was always in fun. No one was trying to hurt anyone." Fullenwiley averred further that the plaintiff "was always misbehaving. One day I was playing around with [the plaintiff] wrestling with him. [The plaintiff] is a big kid, like 230–240 pounds

so when he was down on the floor, I kneeled down on him. . . . There was a bunch of other people there too that day that saw what was going on. . . . While [the plaintiff] was on the ground, [he] got handcuffed. I think it was [Flanigan] that handcuffed [the plaintiff] with his handcuffs because he was on duty. He didn't do it to be malicious, we were all just playing around. Someone, I think it was [V] took my digital camera out and started taking pictures of us horsing around. I remember that three pictures were taken. I put them on my computer . . . for us all to look at. Two of the pictures had [Flanigan] in the background, standing by the doorway. [Flanigan] saw those pictures and told me to delete them because it looked bad and he could get in trouble. The third picture was of [the plaintiff] on the ground and you could see the handcuffs. I saved that picture and joked with [the plaintiff] that we were going to show all the girls at [school] how we got him on the floor. I've only seen [Flanigan] use his metal handcuffs that one time on [the plaintiff]. . . . The only other thing that I could remember [Flanigan] doing in my store while he was working was that sometimes he took out his Taser. . . . A few times when . . . [the plaintiff] misbehaved, [Flanigan] took his Taser out and took the cartridge off the end of it. Then he turned it on so you could see the electricity flash. [Flanigan] went near the boys with it to scare them, but he never touched anyone with it or used it on the boys. It probably wasn't appropriate for [Flanigan] to do that, but he was only doing it in fun."

Additionally, the plaintiff attached to his memorandum a copy of Flanigan's performance appraisal from the Waterbury department of human resources, dated November 29, 2004, and a copy of an interdepartmental memorandum, dated November 6, 2005, critiquing certain aspects of Flanigan's performance. In his performance appraisal, Flanigan's supervisor indicated that Flanigan has "on occasion exercise[d] poor judgment." Similarly, in Captain A. Gallo's interdepartmental memorandum regarding Flanigan's performance, Gallo averred that Flanigan "has shown a pattern of being insensitive to citizens that he interacts with and at times has used poor judgment when his discretion is needed."

The following legal principles are relevant to our resolution of the plaintiff's claim. "The general rule is that governments and their agents are immune from liability for acts conducted in performance of their official duties. The common-law doctrine of governmental immunity has been statutorily enacted and is now largely codified in . . . § 52-557n. . . . Section 52-557n provides in relevant part: (a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official

duties . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct . . . ." (Citation omitted; internal quotation marks omitted.) *Martin* v. *Westport*, 108 Conn. App. 710, 729, 950 A.2d 19 (2008).

"Whether a party's conduct is wilful is a question of fact. See *Bauer* v. *Waste Management of Connecticut, Inc.*, 239 Conn. 515, 527, 686 A.2d 481 (1996) ([w]hat constitutes wilfulness is a question of fact). The term has many and varied definitions, with the applicable definition often turn[ing] on the specific facts of the case and the context in which it is used. *Doe* v. *Marselle*, 236 Conn. 845, 851, 675 A.2d 835 (1996); *Screws* v. *United States*, 325 U.S. 91, 101, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945). As we previously have observed, Black's Law Dictionary (6th Ed. 1990) demonstrates the varied ways that wilful has been defined ranging from voluntary; knowingly; deliberate . . . [i]ntending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary to [p]remeditated; malicious; done with evil intent, or with a bad motive or purpose, or with indifference to the natural consequences.

"Additionally, we have defined the term differently depending on the context. See, e.g., *Dubay* v. *Irish*, 207 Conn. 518, 533, 542 A.2d 711 (1988) (wilful misconduct requires design to injure); *DeMilo* v. *West Haven*, 189 Conn. 671, 678–79, 458 A.2d 362 (1983) (wilful destruction of bridge means intentional destruction of bridge and intent to cause injury); *State* v. *Gotsch*, 23 Conn. Supp. 395, 398–99, 184 A.2d 56 (1962) (wilful commonly means intentional, as opposed to accidental, but in penal statute it means with evil intent); *Guest* v. *Administrator*, 22 Conn. Supp. 458, 459, 174 A.2d 545 (1961) (wilful breach of rule means deliberate violation done purposely with knowledge as opposed to result of thoughtlessness or inadvertence). *Doe* v. *Marselle*, supra, 236 Conn. 851–52 n.8. The term wilful also has been described as including not only the mere exercise of the will in failing to comply with the statute [in question], but also an intention to do an act that he knows, or ought to know, is wrongful or forbidden by law . . . . Ballentine's Law Dictionary (3d Ed. 1969).

"Correspondingly, the term wilful has been used to describe conduct deemed highly unreasonable or indicative of bad faith. See *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 395, 685 A.2d 1108 (1996) ([t]o determine whether the bad faith exception applies, the court must assess whether there has been substantive bad faith as exhibited by, for example, a party's . . . wilful violations of court orders . . . ), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn.

147, 154–55, 735 A.2d 333 (1999); *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, 282 Conn. 576, 591–92 n.13, 923 A.2d 697 (2007) (same); *Matthiessen* v. *Vanech*, 266 Conn. 822, 833, 836 A.2d 394 (2003) (While we have attempted to draw definitional distinctions between the terms wilful, wanton or reckless, in practice the three terms have been treated as meaning the same thing. The result is that [wilful], wanton, or reckless conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) *Saunders* v. *Firtel*, 293 Conn. 515, 530–32, 978 A.2d 487 (2009); see *Dubay* v. *Irish*, supra, 207 Conn. 533 n.8 ("[w]ilful misconduct is intentional misconduct, and wanton misconduct is reckless misconduct, which is the equivalent of wilful misconduct" (internal quotation marks omitted)).

In reaching its conclusion that Flanigan's conduct of pushing the plaintiff to the ground and handcuffing him was wilful, the court stated that "Flanigan acted with a deliberate or reckless disregard for the plaintiff's safety and the consequences of his action." With respect to the parties' evidence, submitted in support of, or in opposition to the defendant's motion for summary judgment, the court reasoned that the plaintiff's unwillingness to participate in Flanigan's handcuffing demonstration buttressed its determination that Flanigan engaged in wilful misconduct.

Similarly, the defendant relies on the fact that Flanigan pushed the plaintiff to the ground just prior to handcuffing him as conclusive evidence that Flanigan's conduct exceeded mere negligence. The defendant states that "[a]ny such argument [that Flanigan's act of pushing the plaintiff to the ground constituted mere negligence] would defy common sense, because any reasonable person in Flanigan's position would have known that the plaintiff was not a willing participant in what the plaintiff now calls a mere demonstration."[10]

The court and the defendant both ignored the import of the evidence proffered by the plaintiff in his opposition to the defendant's motion for summary judgment. Flanigan testified at his deposition that the plaintiff asked to be handcuffed. Similarly, Flanigan averred in his sworn police statement that, on the date in question, the plaintiff looked at his duty belt and "wanted to play with my handcuffs." On the basis of this evidence, a jury reasonably could conclude that the plaintiff was a willing participant in Flanigan's handcuffing demonstration.

Moreover, the plaintiff produced additional evidence that raises a genuine issue of material fact as to whether Flanigan's conduct was negligent or wilful. Specifically, in his statement to the police, Flanigan averred that he "did not think it was a big deal" to demonstrate the use

of handcuffs on the plaintiff "because that was what I was going to teach the Explorers that night." To the extent that Flanigan, in fact, was demonstrating the professional use of handcuffs on the plaintiff, a jury reasonably could infer from Flanigan's conduct that he was not acting wilfully, as that term has been used throughout our case law. See *Saunders* v. *Firtel*, supra, 293 Conn. 530–32; see also *Daley* v. *Kashmanian*, 193 Conn. App. 171, 179, 219 A.3d 499 (2019) ("The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them." (Internal quotation marks omitted.)), cert. granted, 335 Conn. 939, 237 A.3d 1 (2020), and cert. denied, 335 Conn. 940, 237 A.3d 1 (2020). Indeed, such an inference is supported by Fullenwiley's statement that, when Flanigan handcuffed the plaintiff, "[h]e didn't do it to be malicious, we were all just playing around."

Furthermore, Flanigan's supervisor indicated that Flanigan "has shown a pattern of being insensitive to citizens that he interacts with and at times has used poor judgment when his discretion is needed." Indeed, Flanigan's poor judgment had been on display in other instances, namely, his use of his Taser to scare the plaintiff and others. On the basis of this evidence, *viewed in the light most favorable to the plaintiff*, a jury reasonably could conclude that Flanigan's conduct, although inappropriate, was merely a lapse in judgment that was more akin to negligent horseplay than wilful misconduct, particularly in light of the evidence that comparable physical contact at World Technology "was always in fun."

Finally, the court's reliance on Flanigan's violation of the defendant's departmental policy as evidence that he engaged in wilful misconduct is misplaced. The mere fact that Flanigan's use of handcuffs "was in violation of the [defendant's] policies" does not make his conduct per se wilful. Whether a party engaged in wilful, wanton or reckless conduct cannot be determined simply by ascertaining whether an actor violated a policy, but, rather, it requires a determination of the actor's state of mind when violating the policy. See *Begley* v. *Kohl & Madden Printing Ink Co.*, 157 Conn. 445, 450–51, 254 A.2d 907 (1969) ("Recklessness is a state of consciousness with reference to the consequences of one's acts. . . . It requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent." (Citation omitted; internal quotation marks omitted.)). As noted, Flanigan "has shown a pattern of being insensitive to citizens that he

interacts with and at times has used poor judgment when his discretion is needed." This evidence raises a genuine issue as to whether Flanigan's conduct was negligent or wilful.

B

The defendant argues in the alternative that we should affirm the judgment of the trial court on the ground that Flanigan was not acting within the scope of his employment when he pushed the plaintiff to the ground and handcuffed him. We are not persuaded.

Section 52-557n (a) provides that a local government will not be liable for the negligent acts or omissions of an employee unless the employee was "acting within the scope of his employment or official duties." In determining whether an employee has acted within the scope of employment, "courts look to whether the employee's conduct: (1) occurs primarily within the employer's authorized time and space limits; (2) is of the type that the employee is employed to perform; and (3) is motivated, at least in part, by a purpose to serve the employer. . . . Ordinarily, it is a question of fact as to whether a wilful tort of the servant has occurred within the scope of the servant's employment . . . [b]ut there are occasional cases [in which] a servant's digression from [or adherence to] duty is so clear-cut that the disposition of the case becomes a matter of law." (Citation omitted; internal quotation marks omitted.) *Harp* v. *King*, 266 Conn. 747, 782–83, 835 A.2d 953 (2003). More specifically, we have held that a police officer's actions "occurred in the course of duties if [the actions] took place (1) within the period of employment, (2) at a place where the employee could reasonably be, and (3) while the employee is reasonably fulfilling the duties of employment or doing something incidental to it." *Crotty* v. *Naugatuck*, 25 Conn. App. 599, 603–604, 595 A.2d 928 (1991).

The trial court, in determining that there was a genuine issue of material fact as to whether Flanigan was acting within the scope of his employment at the time he witnessed the plaintiff being sexually assaulted, relied on the following facts: "In the present case, the evidence submitted indicates that Flanigan stopped at World Technology while on his way to volunteer with the Police Explorers; World Technology was within Flanigan's normal jurisdiction; Flanigan often stopped at World Technology, while both on and off duty; and, at the time of the abuse Flanigan was dressed in full police uniform with his duty belt, which included his handcuffs (and presumably his weapon)—all of which were issued by the city." These factors similarly lead us to conclude that there is a genuine issue of material fact as to whether Flanigan was acting within the scope of his employment when he pushed the plaintiff to the ground and handcuffed him. Flanigan was acting "within [his] period of employment," "at a place where

[he] could reasonably be," and a jury reasonably could find that he was "fulfilling the duties of employment or doing something incidental to it" when he demonstrated the use of handcuffs on his way to a program where he often demonstrated the use of handcuffs. See *Crotty* v. *Naugatuck*, supra, 25 Conn. App. 603–604.

Accordingly, we conclude that the court erred in granting the defendant's motion for summary judgment as to the first allegation of negligence because the plaintiff proffered sufficient evidence to demonstrate the existence of a genuine issue of material fact with respect to whether Flanigan engaged in wilful misconduct or negligent misconduct when he pushed the plaintiff to the ground and handcuffed him, as well as whether Flanigan was acting within the scope of his employment at that time.

## II

We turn next to the plaintiff's duty to protect claim and the court's conclusion that there was no genuine issue of material fact as to whether it was apparent to Flanigan that the plaintiff was an identifiable victim subject to imminent harm. Notably, in reaching its conclusion that the identifiable victim subject to imminent harm exception to governmental immunity did not apply, the court considered, and answered, a dispositive question of law that the defendant did not raise in its motion for summary judgment. Consequently, we conclude that the court erred in rendering summary judgment in favor of the defendant on the basis of a defense that was never raised in the defendant's motion.

"[T]he court's function is generally limited to adjudicating the issues *raised by the parties* on the proof they have presented and applying appropriate procedural sanctions on motion of a party. . . . The parties may, under our rules of practice, challenge the legal sufficiency of a claim at two points prior to the commencement of trial. First, a party may challenge the legal sufficiency of an adverse party's claim by filing a motion to strike. . . . Second, a party may move for summary judgment and request the trial court to render judgment in its favor if there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. . . . In both instances, the rules of practice require a party to file a written motion to trigger the trial court's determination of a dispositive question of law. *The rules of practice do not provide the trial court with authority to determine dispositive questions of law in the absence of such a motion.*" (Citations omitted; emphasis altered; internal quotation marks omitted.) *Greene* v. *Keating*, 156 Conn. App. 854, 860–61, 115 A.3d 512 (2015). "[A] trial court lacks authority to render summary judgment on grounds not raised or briefed by the parties that do not involve the court's subject matter jurisdiction." *Bombero* v. *Bombero*, 160 Conn. App. 118, 131, 125 A.3d 229 (2015).

In response to the plaintiff's allegation that the defendant was liable for Flanigan's failure to protect him from Fullenwiley's unlawful conduct, the defendant, in its motion for summary judgment, argued only that Flanigan's conduct was wilful and outside of the scope of his employment.[11] Specifically, the defendant stated: "The pleadings together with the sworn statements and testimony of the plaintiff clearly establish undisputed facts which can only lead to the conclusion that . . . Flanigan was not acting within the scope of his employment or official duties and that he had committed acts or omissions constituting wilful misconduct. As a result, no liability exists on the part of the defendant . . . pursuant to § 52-557n for Flanigan's actions."

The trial court did not address these arguments, or the plaintiff's responses to them, as they related to the plaintiff's claim that Flanigan negligently failed to protect the plaintiff from Fullenwiley's assault. Instead, the court considered only whether the plaintiff had established an exception to discretionary act immunity under § 52-557n, noting that "[a] police officer's actions in carrying out [his duty to protect] are discretionary and typically afforded governmental immunity." The court then correctly stated that "governmental immunity does not apply when the circumstances make it apparent to [a] public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm," before concluding that "there is no evidence in the record from which a reasonable jury could determine that it was apparent to Flanigan that Fullenwiley would place a [sex toy] against the plaintiff's buttocks." (Internal quotation marks omitted.) The plaintiff hardly can be faulted for failing to present evidence to address an argument that the defendant never made. Again, in its motion for summary judgment, the defendant argued only that it was insulated from liability for Flanigan's conduct under § 52-557n because the conduct at issue was wilful and outside of the scope of his official duties. The defendant never argued that it was shielded from liability because Flanigan's conduct was discretionary. Consequently, the plaintiff never had the opportunity or reason to make the counterargument that the exception to discretionary act immunity applies to the circumstances here. The court, thus, improperly rendered summary judgment in favor of the defendant on a ground that neither party raised.

The judgment is reversed and the case is remanded with direction to deny the defendant's motion for summary judgment and for further proceedings.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] We note that the present action was commenced on behalf of John Doe, a minor child, by and through his parent, Jane Doe, as next friend. Thereafter, when John Doe reached the age of majority, he amended the complaint to delete the allegation that the claims were brought by his parent in a

representative capacity. All references herein to the plaintiff are to John Doe.

[2] Flanigan is not a party to this appeal. Therefore, we refer to the city of Waterbury as the defendant throughout this opinion.

[3] In his four count second amended complaint, the plaintiff brought three counts against Flanigan, alleging that Flanigan (1) falsely arrested the plaintiff, (2) participated in the sexual assault of the plaintiff, and (3) was negligent in his interaction with the plaintiff. The plaintiff subsequently settled all of his claims against Flanigan.

[4] The trial court denied the defendant's motion for summary judgment as to the plaintiff's failure to report allegation. Subsequently, the plaintiff withdrew that part of his negligence claim against the defendant.

[5] In the third count, the plaintiff also incorporated paragraphs 1 through 5 of the first count, which stated as follows:

"1. At all times relevant hereto the plaintiff was a child under the age of [sixteen] years of age.

"2. At all relevant times . . . Flanigan was employed by the defendant . . . as a police officer.

"3. At all relevant times the plaintiff was on probation from Juvenile Court.

"4. Beginning in the winter of 2006 the plaintiff would assist . . . Fullenwiley at his place of business known as World Technology located at 81 Bank Street, in the city of Waterbury, Connecticut.

"5. . . . Flanigan was a frequent visitor at . . . Fullenwiley's place of business, both while on and off duty as a Waterbury police officer."

[6] The motion filed on November 22, 2016 was subsequently sealed by the court, and the defendant filed a redacted motion for summary judgment with an accompanying memorandum on July 6, 2017.

[7] The court noted that "[t]he evidence submitted indicates that Flanigan was wearing his city issued police uniform and duty belt, which included his handcuffs (and presumably his weapon), and that he stopped into World Technology on his way to volunteer for the Police Explorers program."

[8] At oral argument before this court, both parties acknowledged that they had previously agreed that, after settling with Flanigan, the plaintiff also would withdraw his remaining claim against the city alleging a failure to report, and, instead, proceed solely on the two claims alleging negligence in handcuffing the plaintiff and a failure to protect the plaintiff from the assault. Accordingly, the parties agree that the subject of this appeal was not rendered moot by the plaintiff's withdrawal of part of the fourth count.

[9] This statement is at odds with Flanigan's testimony at his deposition that he resigned from the Police Explorers in 2005 due to scheduling conflicts. This would have been before the incident with the plaintiff. Such conflicts in recollection are for the finder of fact to resolve.

[10] We note that, on appeal, the defendant has not argued, as it did before the trial court, that the plaintiff's allegation that Flanigan photographed him operates as an admission to support its special defense that Flanigan engaged in wilful misconduct. Moreover, although the plaintiff in his principal appellate brief alludes to evidence that Flanigan "may" have taken a picture of a handcuffed juvenile, and similarly alleged, in his opposition to summary judgment before the trial court, that Flanigan photographed him, the plaintiff also relied on statements made by both Fullenwiley and Flanigan to demonstrate that the question of whether Flanigan photographed him remained a disputed issue of fact. Thus, even if we agreed that purported evidence of Flanigan photographing the plaintiff would support the defendant's claim of wilful misconduct, the issue is not properly before us, and, as a disputed fact, remains one for the trier of fact to resolve.

[11] Although the defendant raised in its seventh special defense its alternative claim that it was entitled to immunity for the discretionary acts of Flanigan, it failed to raise and argue this claim in its motion for summary judgment.

———————————